BEUTTELL & SONS *v.* UNITED STATES (No. 1696).[1]

1. CONSTRUCTION, PARAGRAPH 303, TARIFF ACT OF 1913—"RUGS FOR FLOORS."
   Paragraph 303, tariff act of 1913 ("rugs for floors"), includes only those rugs made from carpets or carpeting.

2. CONSTRUCTION, PARAGRAPH 300; TARIFF ACT OF 1913—"SIMILAR RUGS."
   All the rugs named in paragraph 300, tariff act of 1913, are handmade or hand tufted. Hence, a rug not handmade or hand tufted is not a "similar rug" within the paragraph.

3. CONSTRUCTION, PARAGRAPH 300, TARIFF ACT OF 1913—"WOVEN WHOLE FOR ROOMS."
   The language "carpets of every description, *woven whole for rooms*," paragraph 300, tariff act of 1913, shows, by the express inclusion of this class of "carpets" or carpeting, that the other enumerations therein would not otherwise have included it; in other words, that carpets and carpeting and things made therefrom were not otherwise embraced within paragraph 300.

4. SEAMLESS WILTON AND TAPESTRY BRUSSELS RUGS.
   Seamless Wilton and tapestry Brussels rugs, cut from long rolls of "carpet or carpeting" and fringed or bound, are not dutiable under paragraph 300, tariff act of 1913, as "similar rugs" to the rugs named in paragraph 300, because they are machine-made, whereas the rugs named in paragraph 300 are handmade or hand tufted. They are, by virtue of paragraph 303, dutiable, respectively, at the rate prescribed by paragraph 294 for Wilton carpets or carpeting, and at the rate prescribed by paragraph 297 for tapestry Brussels carpets or carpeting.

United States Court of Customs Appeals, December 21, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7874 (T. D. 36229). [Reversed.]

---

[1] Reported in T. D. 36905 (31 Treas. Dec., 656).

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

[Oral argument Oct. 17, 1916, by Mr. Sharretts and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The legislative conspectus, the construction of which is by this appeal presented to the court, is embraced in the following paragraphs of the tariff act of 1913:

293. Aubusson, Axminster, moquette, and chenille carpets, figured or plain, and all carpets or carpeting of like character or description, 35 per centum ad valorem.

294. Saxony, Wilton, and Tournay velvet carpets, figured or plain, and all carpets or carpeting of like character or description, 30 per centum ad valorem.

296. Velvet and tapestry velvet carpets, figured or plain, printed on the warp or otherwise, and all carpets or carpeting of like character or description, 30 per centum ad valorem.

297. Tapestry Brussels carpets, figured or plain, and all carpets or carpeting of like character or description, printed on the warp or otherwise, 20 per centum ad valorem.

303. Mats, rugs for floors, screens, covers, hassocks, bed sides, art squares, and other portions of carpets or carpeting, composed wholly or in part of wool, and not specially provided for in this section, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description.

300. Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem.

The appeal involves an importation of seamless Wilton rugs marked "A," and of seamless tapestry Brussels rugs marked "B" on the invoice. They were on importation classified by the collector as "rugs, similar to Axminster rugs," under paragraph 300, *supra*, which classification was on protest sustained by the Board of General Appraisers, Mr. General Appraiser Brown dissenting. The importers appeal to this court, assigning as error and claiming here, as below, that the articles are properly dutiable as "rugs for floors" as that term is employed in paragraph 303, *supra*.

The record is replete with testimony of several trade witnesses of intelligence and exceptional understanding as to the manufacture of and trade usage relating to the various kinds and classes of rugs known to the wholesale trade of this country.

The quoted legislative epitome makes clear that Congress therein had in mind and distinguished for dutiable purposes two kinds of rugs, to wit, "Oriental, Berlin, Aubusson, Axminster, and similar rugs," of paragraph 300, and "rugs for floors," as otherwise qualified in paragraph 303. We may well anticipate then that the record would deal solely with articles known as "rugs," the question being what did Congress intend as the line of differentiation between the two classes of rugs thus made differently dutiable.

Previous litigation has afforded aid in the proper interpretation of paragraph 303. Essentially the same language was used in the tariff

act of 1883, paragraph 378, providing that "mats, rugs, screens, covers, hassocks, bed sides, and *other portions* of carpets or carpetings, shall be subjected to the rate of duty herein imposed on *carpets or carpeting of like character or description.*" (Italics ours.) (22 Stat. L., 510.) In Beuttell *v.* Magone (157 U. S., 154, 158), the Supreme Court construed these words, thereby declaring the class of rugs included therewithin to be "rugs made from portions of carpets and carpetings." The court employed the following language:

It is clear that rugs in the generic sense are specifically dutiable as such under the foregoing provisions. The imposition of a different duty on rugs of a particular kind is an exception to the general rule established by the statute. The exception is as "to rugs, screens, covers, hassocks, bed sides, and other portions of carpets and carpetings," which are made to pay the duty imposed on "carpets and carpetings of like character and description." The obvious construction of this language is that which makes the words "other portions of carpets and carpetings" qualify the enumerated articles, and, of course, if they be thus construed only rugs made from "portions of carpets and carpetings" would be subject to the exceptional classification.

It is urged that this interpretation is erroneous, because the limiting words "other portions of carpets and carpetings" simply qualify the last of the enumerated articles; that is, the word "bed side," and none other. It is self-evident that the qualifying words must be held to relate to some of the items embraced in the enumeration which they qualify. To hold otherwise would be to read them out of the statute. Do they qualify all or one is the question. To hold that they qualify only one of the items of the enumeration is to make that item an exception, and therefore make the statute operate an absurdity. If the qualifying words only apply to "bed sides," then all the other items enumerated, viz, "mats, rugs, screens, covers, and hassocks," are dutiable at the rate imposed on "carpets and carpetings of like character and description," although they be not made from "other portions of carpets and carpetings," whilst "bed sides," whatever may be their similarity to "carpets or carpetings," will only be dutiable at the rate of carpets and carpetings if made from pieces of carpets. It can not be supposed the intention of the statute was to operate this inequality or to work out this unjust result. The articles are all enumerated together, and the manifest purpose is that all of them shall pay a like duty under similar conditions. We can not violate the express language in order to dissociate things classed together by the law, and thus make one of the class subject to a higher duty than the others, although they be of like character and description.

Speaking of the entire legislative concept of that act the court in the same case (p. 160) employed language defining the congressional intent here equally pertinent and instructive:

We think the purpose of the statute, plainly conveyed by its text, was to tax carpets as enumerated therein. That the effect of its language and its intent were also to tax rugs, made as rugs, and clearly distinguishable as such, by reason of their process of manufacture, size, shape, pattern, etc., at the duty imposed on rugs, but to tax rugs made from pieces of carpets or carpetings at the rate imposed on the carpet from which they were made, since, although answering the purpose of a rug, they were really carpeting itself, being made from parts or portions thereof.

Aided by this interpretation of paragraph 303, which in the pertinent particulars is in essentially the same language as that part of the act of 1883 construed in Beuttell *v.* Magone, *supra*, other pertinent portions of the act may be more easily assigned the true congressional

intent. It follows primarily that paragraph 303 was intended by Congress to include only those rugs "made from carpets or carpeting." Paragraph 300, however, contains an instructive and corroborative phrase. It provides in part for "carpets of every description, *woven whole for rooms.*" The express inclusion of this class of "carpets" or carpeting in paragraph 300 by Congress indicates the other enumerations therein would not otherwise have included it. In other words, that carpets and carpeting and things made therefrom were not otherwise embraced within paragraph 300. Indeed, the therein separate legislative enumeration of two certain classes of rugs concludes the question that Congress had in mind a certain distinction between the two enumerated classes.

The testimony in the case is singularly consistent and undisputed. There are oriental, Berlin, Aubusson, and Axminster rugs either handmade entirely or hand tufted. The point is clearly established, and undisputed in the record. It shows that the oriental rug is always entirely handmade; that the Berlin rug is always hand tufted; that the Aubusson rug is entirely a hand needle-made tapestry; that the true Axminster rug is handmade and hand tufted. There are so-called patent or imitation Axminster rugs made by machinery, but they imitate only in name. The chenille and hand tufted Axminster rugs are in part handmade or hand tufted. There is, however, a common characteristic adhering to an extensive commercial class of all the enumerated rugs in paragraph 300 in that they are handmade or hand tufted. Moreover, they are not made from portions of carpets or carpeting. The possible exception, that might be spoken of as Axminster rugs, is the patent Axminsters, which, by reason of the language of paragraph 303, are included therewithin, in that they are made from carpet or carpeting and are excluded from paragraph 300, in that they are not in fact or description Axminsters or similar to the original and true Axminster rug.

On the other hand, all the enumerations of paragraph 303 "mats," "rugs for floors," "screens," "covers," "hassocks," "bed sides," and "art squares" are machine or loom made entirely. They are all made in rolls from 40 to 60 yards. Like Wilton and tapestry Brussels rugs, such as here in suit, they are woven in long rolls, the particular patterns or rugs being indicated by a drop in the pile continuing as the warp. This is accomplished by manipulation of the loom. These, after the individual rugs or mats are cut apart by hand where thus indicated, are fringed or bound as desired. Carpets and carpeting of all kinds are made precisely the same way, save that where the carpet is to be sewn for an entire room or rug the pile is not dropped for indication purposes. Every witness in this record testified, and that testimony is nowhere contradicted or impeached, that the loom product from which these rugs are subsequently cut is "carpet or

carpeting," and so spoken of in trade, and that the separate patterns do not become known as a rug or rugs until they are so cut therefrom and fringed or otherwise bound. Plainly, then, they are rugs "made from portions of carpets or carpetings," as paragraph 378 of the tariff act of 1883 was construed in Beuttell v. Magone, *supra*. They are all entirely machine made. While each is a complete figure in itself that is but one of the results of such fabrication, and the record shows not the least more expensive, whether the figures are smaller or more extensive.

It can not be that Congress intended, as claimed by the Government, that this skip of the pile for identification and cutting purposes was the differentiation which cast the goods otherwise included in paragraph 303 into paragraph 300, for the record shows "mats," and in fact all the other enumerations in paragraph 303 made the same way, and the mats concededly fall only within paragraph 303 for dutiable purposes. That rule of decision would exclude all the express enumerations therein made from paragraph 303.

It can not be that Congress intended "carpets," because seamless and of complete design, should be included in the terms "and Oriental, Berlin, Aubusson, Axminster, and similar rugs," for that would render the previous part of the paragraph, "carpets of every description, woven whole for rooms," surplusage. Congress here makes plain that such are not similar rugs to the included enumerations. There are, however, similar rugs to those enumerated in paragraph 303 known in trade, in that they are handmade or tufted, such as the Donegal, Kildare, Teheran, Cairo, and Mongol. (Record, pp. 39 and 42.)

There seems no serious contention that the "mats" herein represented by Exhibit 2, which are loom made in the piece with identifying lines, are not properly dutiable under paragraph 303 accordingly, as therein required.

The court, therefore, is of the opinion that these importations not being handmade or tufted are not similar to the oriental, Berlin, Aubusson, or Axminster rugs made dutiable under paragraph 300, but being machine made or loom woven and being made from carpets or carpeting are perforce of paragraph 303 dutiable, the Wilton rugs under paragraph 294 and the tapestry Brussels rugs under paragraph 297 of the present tariff law.

*Reversed.*