UNITED STATES *v.* CARSON, PIRIE, SCOTT & Co. (No. 1846).[1]

1. EVIDENCE—JUDICIAL KNOWLEDGE.
The court may, in the absence of testimony, know that yarn is spun and that a piece of cloth is composed of warp and filling. threads, and that there is a process of manufacture of pile fabrics and that Wilton velvet carpets are made by this process. The court judicially knows that Wilton velvet carpets are machine made.
2. CONSTRUCTION, PARAGRAPH 300, TARIFF ACT OF 1913—"SIMILAR RUGS."
Machine-made rugs are not classifiable under paragraph 300, tariff act of 1913.—·
Beuttell & Sons *v.* United States (7 Ct. Cust. Appls., 356; T. D. 36905).
3. CONSTRUCTION, PARAGRAPHS 300 AND 303, TARIFF ACT OF 1913—RUGS USED FOR FLOOR COVERINGS.
It was the intention of Congress to provide, by paragraphs 300 and 303, tariff act of 1913, for all rugs used as floor coverings.
4. WILTON VELVET RUGS.
Seamless Wilton velvet rugs of various sizes are not classifiable under paragraph 300, tariff act of 1913 ("Oriental, Berlin, Aubusson, Axminster, and similar rugs"), or under the paragraph covering nonenumerated articles. They are dutiable, by virtue of paragraph 303, at the rate imposed on velvet carpeting by paragraph 294.

---

[1] T. D. 37519 (34 Treas. Dec., 106).

United States Court of Customs Appeals, January 29, 1918.

APPEAL from Board of United States General Appraisers, Abstract 40718.

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence* and *Thomas J. Doherty*, special attorneys, of counsel), for the United States.

Submitted on record by appellees.

[Oral argument Oct. 11, 1917, by Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise imported in this case was stipulated by counsel for the Government and importers to consist of seamless Wilton velvet rugs of various sizes. The merchandise was assessed for duty under paragraph 300 of the tariff law of 1913 and was held by the board dutiable under paragraph 303 at the rate imposed on velvet carpeting by paragraph 294 of the same act.

In this court the ground of appeal is stated to be that the decision of the board is without any evidence to support it. The stipulation is recited, it is true, but the contention is that there is no evidence to show that the carpet was not handmade or hand-tufted, and not similar to Oriental, Aubusson, Berlin, and Axminster rugs covered by paragraph 300.

There is no appearance or brief for the importers.

The first question we consider is whether the record is such as to exclude the importation from paragraph 300, which provides for "carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem."

It is true that there was no evidence offered in this case in terms showing that the rugs in question were not rugs of any one of the kinds named in this paragraph or similar rugs, but there was the distinct admission that they were Wilton velvet rugs. In the absence of proof to the contrary, a court will take judicial notice of the ordinary processes of manufacture of goods of this character. The court may, in the absence of testimony, know that yarn is spun and that a piece of cloth is composed of warp and filling threads, and that there is a process of manufacture of pile fabrics, and that Wilton velvet carpets are made by this process. This information, which every court is supposed to possess or can acquire by reference to the ordinary lexicographic definitions of an article, may be controlled or directed by testimony. Indeed, it sometimes happens that commercial testimony accords to an article or a process a term or definition startlingly at variance with the commonly understood meaning. But this does not call upon the court to withhold such knowledge of ordinary terms or processes as it may possess, and where nothing is

offered to the contrary, we think the court may well assume that the common understanding of these terms is fairly shown by historic treatises and lexicographers. This case is barren of any testimony which restricts the meaning of the term Wilton or velvet as applied to carpets or rugs, nor is there the slightest testimony to show that the terms "Oriental," "Berlin," "Aubusson," or "Axminster" rugs are extended beyond their ordinary signification. When given their ordinary and historical meaning, they do not include machine-made rugs.

It was pointed out in Beuttell v. United States (7 Ct. Cust. Appls., 356; T. D. 36905) that the rugs covered by paragraph 300 as Oriental, Berlin, Aubusson, or Axminster rugs were handmade or hand tufted. But it is said that this was rested on testimony and that no such testimony was offered in the present case. But there is a common meaning and understanding of the terms "Oriental rug," "Berlin rug," "Aubusson rug," and "Axminster rug." To illustrate, we quote from the International Encyclopedia under the title of "carpet":

Aubusson carpets are made at the famous tapestry factories in Aubusson, and are a species of tapestry carpet. The center design of an Aubusson carpet is usually a medallion. The Savonnerie and Aubusson carpets, being of fine material and *hand-made*, are among the most expensive of floor coverings. The real Turkey carpet is made in one piece. The patterns consist merely of curved and angular stripes of variegated but dark and unobtrusive colors. The warp is of strong linen or cotton, to which bunches or tufts of colored worsted are tied according to the pattern, a drawing of which is placed before the weaver to copy. *The colored worsteds are tied very rapidly by young girls.* The Axminster carpet is merely the English-made Turkey carpet, first produced in Axminster, England, in 1755, by Thomas Whitty. They are usually made to order, of the size required for the room. From the tediousness of the process of manufacture and the large amount of wool required, they are very expensive. The Berlin carpets, made in Germany and in the United States, are similar *to the handmade Axminsters.*

It is well known, and from descriptions by lexicographers and encyclopedias it appears, that Wilton velvet carpets are not hand-woven, but are woven by machinery as are Brussels carpets, with a difference that the Wilton carpets have the pile cut, while the Brussels carpets leave the pile looped and are not handmade in any sense. They do not correspond to the rugs provided for in paragraph 300.

It is therefore no stretch to say that the importers' case was made out by showing that these rugs were Wilton velvet rugs, as by that process he shows that they were not Oriental, Aubusson, Berlin, or Axminster rugs, and by the definition of the term Wilton velvet rugs as established by the authorities, it is shown that they are not handmade but machine-made rugs prima facie.

This case is clearly distinguishable from Beuttell v. Magone (157 U. S., 154, 158). In the statute of 1883, which was the statute under

consideration in that case, the generic word "rugs" was in contrast with "mats, rugs, screens * * * and other portions of carpets and carpetings." A provision of the paragraph there considered was for "Saxony, Wilton, and Tournay velvet carpets, forty-five cents a square yard, and in addition thereto 30 per centum ad valorem." There was a further provision for "carpets and carpetings of wool, flax, or cotton, or parts of either, or other material not otherwise herein specified, 40 per centum ad valorem." Then followed the provisions for "mats, rugs, screens, covers, hassocks, bedsides, and other portions of carpets and carpetings" at the rate imposed on carpets or carpetings of like character or description, and this in turn was followed by a provision in general terms for rugs at 40 per centum ad valorem.

In that case it appeared that the rugs in question contained materials used in making rugs which are not the kind or quality or material used in making carpets. They were of like character in the sense that they were pile fabrics as were Wilton carpets. It is obvious that the question which stood for decision was whether the general provision for rugs which was broad enough to cover all rugs should control or the provision for carpets of "Saxony, Wilton, and Tournay velvet" extended by including within the same rate portions of carpets or carpetings. As the basic provision was for carpets of Saxony, Wilton, or Tournay, the term "carpetings" as there employed would not extend the application. The court held on this state of the record that only such rugs fell within the restricted provision as were made up of carpets or carpetings of the kind named.

The present statute is quite different. In the first place, there is no generic provision for rugs which would include the rugs in question. Therefore as these are neither Oriental, Berlin, Aubusson, Axminster, or similar rugs, they must be referred to paragraph 303 or be relegated to the paragraph covering nonenumerated articles. Such intent is not to be lightly inferred. On the contrary, we think the presumption is that Congress intended to provide for all rugs used for floor coverings eo nomine, and that the rugs in question should be held to fall within one or the other of these classes. The changed phraseology of the statute from that of 1883 makes a different construction of the provision for "rugs * * * and other portions of carpets and carpetings" permissible and proper. As was well said by Mr. Justice Holmes in the recent case of Towne *v.* Eisner (advance sheets), "a word is not a crystal, transparent and unchanged, it is the skin of a living thought that may vary greatly in coloring and content according to the circumstances and the time in which it is used," citing Lamar *v.* United States (240 U. S., 60, 65). In the case of Beuttell *v.* United States, supra, we held that the quoted terms of paragraph 303, "portions of carpets or carpeting," were not

restricted to portions of what had constituted uninterrupted lengths of carpet, but included rug material woven after the manner in which carpets are woven, though distinctly marked for rug lengths and intended originally for use as rugs. This was as far as it was necessary to go in that case, but if we should attempt to distinguish between that material and a rug which is in material, texture, and use of exactly the same character because it did not appear whether such rugs were woven singly or in battalions, we would, we fear, "stick in the bark." There is no reasonable distinction to be drawn at this point, and we think the case falls within the reasoning of Beuttell v. United States.

The decision of the board is *affirmed*.