BEUTTELL & SONS *v.* UNITED STATES (No. 1872).[1]

1. CONSTRUCTION, PARAGRAPH 300, TARIFF ACT OF 1913—"AXMINSTER."

Though formerly Axminster rugs were handmade, the evidence being to the effect that now (and at and prior to the enactment of the tariff act of 1913) the term Axminster is generally and commonly understood to cover and include the machine-made product as well as the handmade, and that the handmade article constitutes but a small part of the commerce in Axminster rugs, a machine-made Axminster rug would be dutiable eo nomine under paragraph 300, tariff act of 1913.

2. CONSTRUCTION, PARAGRAPHS 300 AND 303, TARIFF ACT OF 1913—RUGS.

The tariff act of 1913 contains provisions for only two classes of woolen rugs, one being the rugs of paragraph 300, and the other the mats, rugs, etc., of paragraph 303. Since paragraph 300 applies only to certain rugs therein named and those that are similar thereto, the only general provision for woolen rugs is in paragraph 303.

3. CONSTRUCTION, PARAGRAPH 300, TARIFF ACT OF 1913—"WOVEN WHOLE FOR ROOMS."

It can not be said that rugs woven whole in the loom in whole or in part of wool are, by reason of the process of manufacture alone, sufficiently similar to the rugs named in paragraph 300 to be brought within its provisions.

4. MACHINE-MADE WILTON RUGS.

Machine-made Wilton rugs are not dutiable under paragraph 300, tariff act of 1913 ("Oriental, Berlin, Aubusson, Axminster and similar rugs"), but are dutiable under paragraph 294 by virtue of paragraph 303.

United States Court of Customs Appeals, May 22, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8100 (T. D. 37371).

[Reversed.]

*Sharretts, Coe & Hillis* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Apr. 17, 1918, by Mr. Sharretts and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves four protests against the collector's assessment of merchandise imported in 1916 and 1917 at the port of New York. The importations included seamless Wilton rugs, Axminster rugs, chenille rugs, and carpets woven whole for rooms. All were classified and assessed for duty under paragraph 300 of the tariff act of 1913 hereinafter set out. The protests were all abandoned except

---

[1] T. D. 37666 (34 Treas. Dec., 490).

as to the seamless Wilton rugs. These were assessed as rugs similar to Axminster rugs under the paragraph, and the sole question here is whether they are dutiable as assessed at 50 per cent ad valorem or at 30 per cent ad valorem under paragraph 294 of the same act by virtue of the provisions of paragraph 303 thereof. For convenient reference we insert here the paragraphs relating to the classification and assessment of duty upon rugs and carpets as found in Schedule K of the act:

293. Aubusson, Axminster, Moquette, and chenille carpets, figured or plain, and all carpets or carpeting of like character or description, 35 per centum ad valorem.

294. Saxony, Wilton, and Tournay velvet carpets, figured or plain, and all carpets or carpeting of like character or description, 30 per centum ad valorem.

295. Brussels carpets, figured or plain, and all carpets or carpeting of like character or description, 25 per centum ad valorem.

296. Velvet and tapestry velvet carpets, figured or plain, printed on the warp or otherwise, and all carpets or carpeting of like character or description, 30 per centum ad valorem.

297. Tapestry Brussels carpets, figured or plain, and all carpets or carpeting of like character or description, printed on the warp or otherwise, 20 per centum ad valorem.

298. Treble ingrain, three-ply, and all-chain Venetian carpets, 20 per centum ad valorem.

299. Wool Dutch and two-ply ingrain carpets, 20 per centum ad valorem.

300. Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem.

301. Druggets and bockings, printed, colored, or otherwise, 20 per centum ad valorem.

302. Carpets and carpeting of wool or cotton, or composed in part of either of them, not specially provided for in this section, and on mats, matting, and rugs of cotton, 20 per centum ad valorem.

303. Mats, rugs for floors, screens, covers, hassocks, bedsides, art squares, and other portions of carpets or carpeting, composed wholly or in part of wool, and not specially provided for in this section, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description.

At the outset it should be noted that the precise issue here has been before and decided by this court in Beuttell & Sons v. United States (7 Ct. Cust. Appls., 356; T. D. 36905). The Government, being of opinion that such issue, which was there decided adversely to its contention, ought again to be here considered, and following a recognized practice in customs litigation, has made up a new record, which for practical purposes results as a retrial of the former case.

In that case a majority of the board, one member dissenting, sustained the Government's contention. In the present case a majority of the board, one member likewise dissenting, because of the additional testimony and considerations, again sustained the Government's contention.

In the former case we held that these seamless Wilton rugs, which are loom woven, were not dutiable under paragraph 300 as similar to Axminster or other rugs named therein. We were of opinion

upon the record that the Axminster rugs referred to in the paragraph were handmade and hand tufted; that in view of the testimony, the seamless Wilton rugs not being so made were within the statute, rugs made of Wilton carpets or carpeting and under paragraph 303 in connection with paragraph 294 dutiable at 30 per cent ad valorem. It was also said that every witness had testified without contradiction that the loom-woven product from which those rugs were cut and finished was carpets or carpeting and so spoken of in the trade and that the separate rug patterns did not become known as rugs until they were cut from the original web and fringed or otherwise bound. In that case there was no claim that machine-made Axminster rugs were commercially known as Axminster rugs within paragraph 300.

In the present case the Government introduced the testimony of quite a large number of witnesses competent to testify upon the question of such commercial designation and also as to what in fact manufacturers and dealers understand the words "carpets and carpeting" to include.

The importers rely upon the decision in the former case as controlling here. They did not offer evidence to rebut that of the Government in the instant case, but moved into the record here the record in the first case.

It appears that these seamless Wilton rugs as imported are in a finished condition. They are of various sizes, each comprising an entire figure or design with a border extending entirely around the same, the ends being bound or fringed. The materials of which they are made are similar to those of which Wilton carpets are manufactured and they are in whole or in chief value of wool. They are machine made, and it is shown as in the first case that they are woven in long lengths, each containing several rugs, upon looms that are also used in weaving Wilton carpets, although a somewhat different adjustment of the loom is required for rugs than for carpets. In the process of weaving when one rug design has been woven certain weft threads are omitted, leaving a drop or lea in the fabric which separates each rug from the other, at which points, when the web is completed, the fabric is cut and the rugs finished. The new evidence, we think, establishes that the entire fabric when it first emerges from the loom is not known by the manufacturers as carpets or carpeting, but is known as rugs or rugs in the roll or in the piece or web, a fact contrary to that found upon the evidence and assumed by us in the former case.

The evidence establishes that these unfinished rugs in the web are not articles of commerce and are not imported in that condition. Whether or not the manufacturers speak of these rugs in the web as carpets or carpeting or as rugs or rugs in the roll or in the web is not of consequence, because not being the subject of commerce, no

question of commercial designation can arise. Whether or not while in the web they are carpets or carpeting in fact depends upon the common meaning of those words and we have no doubt that in the common acceptation of the term, carpets or carpeting, generically speaking, includes such rugs and the testimony of some of the witnesses sustains that view. It appears that in the wholesale trade dealing in carpets or carpeting those words are not ordinarily applied to or understood to include finished rugs. Neither is that of importance, because they are not claimed to be directly dutiable under paragraph 294 as carpets or carpeting, but fall thereunder, if at all, by force of paragraph 303 providing for their taxation at the rate imposed on carpets or carpeting of like character or description.

Upon the question of the meaning of the word "Axminster," as employed in paragraph 300, the evidence introduced by the Government is substantially this: Axminster carpets and rugs were first made by hand in Axminster, England. After a time, the precise date is unnecessary to determine, machinery was employed in their manufacture, and for 25 years or more machine-made Axminsters have been the subject of importation, of commerce, and of manufacture here. There are different varieties of Axminsters, some taking their name from a particular process of manufacture known as "chenille Axminsters," others are called "moquette," and others by the name of the manufacturer or perhaps some other appellation designed by him, with the result that now, as well as at and before the time of the enactment of the tariff act of 1913, Axminster rugs and carpets are and were chiefly machine made and the importation of handmade Axminsters relatively small in quantity. The witnesses offered in behalf of the Government in the instant case, who did not testify in the earlier one, gave testimony as to the meaning of "Axminster" as used in the wholesale trade dealing in rugs and carpets.

It is unnecessary to refer in detail to such testimony. There is a substantial agreement among all the witnesses that while in its first inception the term "Axminster" related in the trade to handmade products, both carpets and rugs, because they were first made entirely by hand, yet as the methods of production were improved and power-driven looms employed in producing them, the term "Axminster" itself had been enlarged to keep pace with the new methods of production until in the wholesale trade the term "Axminster" or "Axminster rugs," as well as carpets, is now, and at and prior to the enactment of the present tariff law, was generally and commonly understood to cover and include the machine-made product as well as the handmade, and that as already stated the handmade article constitutes but a small part of the commerce in Axminster rugs.

If upon this evidence we were called upon to decide the question as to whether the term "Axminster," in paragraph 300, covered and included machine-made Axminster rugs, we would be compelled to hold that it did. Such a holding would not, however, determine the issue here, which is, whether these Wilton rugs are to be held as similar to and dutiable at the same rate as such Axminsters.

It may be conceded, and we find that for many years Congress has recognized, that there are carpets, carpeting, rugs, mats, bedsides, art squares, and various other floor coverings, and sometimes has and does now distinguish some rugs from carpets and carpeting for tariff purposes by applying different duty rates thereto. This finding makes unnecessary any review here of the statutes and decisions prior to the tariff act of 1883.

As pointed out, the merchandise here is seamless Wilton rugs, which were woven in a loom in long rolls separated by a drop in the weft and of materials similar to those from which Wilton carpets are manufactured, the loom being capable of producing either such rugs or carpets.

The contention of the Government is that because of such method of manufacture these rugs are dutiable under paragraph 300 above quoted as "similar rugs." The Government concedes that if these rugs were "made-up," that is, produced by sewing together and otherwise finishing pieces of Wilton carpets or carpeting into rugs, they would be dutiable under paragraph 294 by virtue of the provisions of paragraph 303, so that the only question here is whether the fact that they were loom-woven in the manner above indicated, instead of being so made up, prevents such classification and places them under the provisions of paragraph 300.

In insisting upon this distinction the Government relies chiefly upon the case of Beuttell *v.* Magone (157 U. S., 154), decided in 1895, in which certain provisions of the act of 1883, materially different from the relevant paragraphs of 1913 now under consideration, were interpreted by the Supreme Court.

That case will be later considered, but as it is material to the present interpretation of the statutes to know their legislative history, we defer its consideration until after some examination of the act of 1883, as well as the changes since made therein, from all of which have resulted the provisions of the act of 1913 above quoted. We note here that these carpet and rug provisions have always been placed in Schedule K of the various acts. As frequent reference to the same may be necessary and also as indicating a constant purpose on the part of Congress to fix duties on the carpet and rug classes of merchandise somewhat with reference to their value, we insert here the paragraphs of the act of 1883 which correspond to those of 1913:

Aubusson, Axminster, and chenille carpets, and carpets woven whole for rooms, 45 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Saxony, Wilton, and Tournay velvet carpets, 45 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Brussels carpets, 30 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Patent velvet and tapestry velvet carpets, printed on the warp or otherwise, 25 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Tapestry Brussels carpets, printed on the warp or otherwise, 20 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Treble ingrain, three-ply, and worsted chain Venetian carpets, 12 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Yarn Venetian, and two-ply ingrain carpets, 8 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Druggets and bockings, printed, colored, or otherwise, 15 cents per square yard, and in addition thereto, 30 per centum ad valorem.

Hemp or jute carpeting, 6 cents per square yard.

Carpets and carpetings of wool, flax, or cotton, or parts of either or other material, not otherwise herein specified, 40 per centum ad valorem; and mats, rugs, screens, covers, hassocks, bedsides, and other portions of carpets or carpetings, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description; and the duty on all other mats not exclusively of vegetable material, screens, hassocks, and rugs, shall be 40 per centum ad valorem.

As indicating the administrative construction of the last above statute, our attention is called to certain decisions of the Treasury Department.

In T. D. 6060 the department held that tapestry velvet and tapestry Brussels carpets woven whole, some pieces being 10 feet square and others of less dimensions, were dutiable as tapestry Brussels and tapestry velvet carpets because they were especially provided for in the act. They were claimed to be dutiable under the last clause of the last paragraph thereof.

In T. D. 8588 two-ply ingrain carpets woven in squares were held to be dutiable at 8 cents per square yard, and in addition 30 per cent ad valorem, which was the rate applied to two-ply ingrain carpets, the department adopting the view of the collector that the provision thereof applied to such articles, "whether in ordinary lengths or woven square or otherwise."

In T. D. 8776 certain Tournay velvet rugs which appeared to be of the same manufacture and of like character and description as Tournay velvet carpets were held dutiable at the rate prescribed for such carpets. In this connection, see also T. D. 8969, where a like conclusion was reached.

T. D. 9174 may be referred to as showing that certain rugs were held to be dutiable as Oriental rugs and the department expressed the view that the commercial distinction between carpets and rugs was that the former cover the entire floor surface of a room, while the latter leave a portion of such surface uncovered.

All these decisions were prior to the tariff act of 1890 and the only tenable inference which we think can be drawn therefrom is that the department was of opinion that woven rugs of material like the carpets referred ·to in the various carpet paragraphs ·were dutiable at the rate imposed on such carpets.

The case of Beuttell *v.* Magone, supra, was instituted in the Circuit Court and there decided in 1890 by Lacombe, Judge (48 Fed., 157).

We think it is unnecessary to embody here the statement of facts in that case, but sufficient to say that the rugs there involved were very similar to the rugs in this case, the principal differences being that the looms upon which they were woven were heavier than those upon which similar Wilton carpets were made, and that the carpets could not be made upon rug looms or vice versa, but we conclude such differences in production alone would not affect the classification.

In his opinion in the case, among other things, the learned judge said that the provisions—

Contained in Schedule K of the tariff act of March 3, 1883, and similar provisions contained in various other tariff acts * * * leave little doubt as to the question raised here. It appears that Congress, after providing for a great many different kinds of carpets or carpetings by specific names, or by descriptive terms indicative of the materials of which they are composed, has further provided that all rugs of like ·character or description to any of these enumerated carpets or carpetings shall be subject to the rate of duty imposed on such carpets or carpetings. Having made provision for such rugs, it has then provided that all other rugs not included in that provision shall be subject to duty at the rate of 40 per cent ad valorem. There is no reason to suppose, as contended by the plaintiff in support of his claim, that Congress intended that rugs of like character or description to some one of the various enumerated carpets or carpetings, when they are, or are made from, portions thereof, should pay the same rate of duty as is imposed on such carpets or carpetings, but, when not so made, should pay a less rate of duty. On the contrary, there is strong reason to conclude that Congress considered the character or description of rugs, if like the character or description of any one of such carpets or carpetings, a more important element in fixing their classification than their mode of manufacture.

After these decisions the tariff act of 1890 was enacted.

The first of the carpet provisions of the act of 1883 was then made to read as follows:

399. Aubusson, Axminister, Moquette, and Chenille carpets, figured or plain, carpets woven whole for rooms, and all carpets or carpeting of like character or description, and Oriental, Berlin, and other similar rugs, 60 cents per square yard, and in addition thereto 40 per centum ad valorem.

The words "figured or plain, and all other carpets or carpeting of like character or description" were also inserted just before the rate provisions found in each of the next four paragraphs of the earlier act. The other provisions thereof, excepting the last, were reenacted with no material changes other than in the rates, but the last paragraph was divided into two parts which we quote:

407. Carpets and carpeting of wool, flax, or cotton, or composed in part of either, not specially provided for in this act, 50 per centum ad valorem.

408. Mats, rugs, screens, covers, hassocks, bedsides, art squares, and other portions of carpets or carpeting, made wholly or in part of wool, and not specially provided for in this act, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description.

It will be observed that paragraph 399 above quoted contains an entirely new provision for " Oriental, Berlin, and other similar rugs," while the provision for "all other mats not exclusively of vegetable materials, screens, hassocks, and rugs" in the last paragraph of the act of 1883 was entirely omitted, and, in passing, it may be said that it has never been reenacted.

Art squares not before mentioned were incorporated in paragraph 408, and the intent to limit it entirely to articles of wool indicated by the phrase, "made wholly or in part of wool," therein inserted for the first time.

In the act of 1894 no material changes were made in these provisions, except as to the rates.

In the act of 1897, paragraph 287 of the act of 1894, which was formerly paragraph 399 of the act of 1890, was reenacted in the following form:

372. Aubusson, Axminster, Moquette, and Chenille carpets, figured or plain, and all carpets or carpeting of like character or description, 60 cents per square yard, and in addition thereto 40 per centum ad valorem.

No other material changes were made in the carpeting paragraphs except as to the rate provisions, but a new paragraph, 379, was enacted, reading as follows:

379. Carpets of every description woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 10 cents per square foot, and in addition thereto, 40 per centum ad valorem.

This change, it will be noted, placed carpets woven whole for rooms and Oriental and Berlin rugs, which formerly had been provided for in connection with Aubusson, Axminster, Moquette, and Chenille carpets and at the same rate of duty, in the new paragraph, added Aubusson, Axminster, and similar rugs to the old provisions, and materially increased the rate of duty thereon, fixing the same at a higher rate than that imposed in any of the carpet and rug paragraphs.

Returning now to the act of 1890, concerning which the changes made therein have been pointed out, we think it is apparent that Congress accepted the interpretation of the statute of 1883 as held by Judge Lacombe, or at least that it did not indicate an intention to establish or recognize any distinction between woven-whole and made-up rugs as such. This is shown by the fact that it enlarged the first five of the carpet paragraphs to include such as were "figured or plain" and provided that each should extend to "all carpets or carpeting of like character or description." What it could have intended by these changes other than that rugs of similar material,

whether woven whole or made up, were to be dutiable at the same rate as such carpets or carpeting, it is difficult to conjecture. The Treasury Department up to date had not made any distinction between these two kinds of rugs, and Judge Lacombe had in effect held that it did not exist. To make sure that no such claim for distinction should find support in the statute, Congress deliberately repealed, by omitting to reenact, the last clause of the last paragraph of the act of 1883, and then to indicate what specific rugs were to be assessed at a certain rate of duty, provided that Oriental and Berlin rugs and other similar rugs should take the rate provided in paragraph 399, leaving, as we think, all other rugs to fall within paragraph 408 of the act, which was the last paragraph of the act of 1883 with the last clause thereof left off, in connection with the relevant carpets and carpeting provisions. This interpretation gives scope to the "not specially provided for" provision in paragraph 408 and makes one harmonious whole of the rug and carpeting paragraphs.

So far as our attention has been directed thereto, the relevant administrative practice under the act of 1890 is shown by the following Treasury rulings and decisions of the Board of General Appraisers:

In G. A. 2352 (T. D. 14560), decided in 1893, various mats of small sizes composed in chief value of wool had been assessed as manufactures of wool under the act of 1890. They were claimed to be dutiable under paragraph 407 of that act, providing for "carpets and carpeting of wool, flax, or cotton, or composed in part of either not specially provided for." The board held that they were not like any of the carpets provided for in the various carpet paragraphs of that act outside of paragraph 407 and ordered reliquidation under that paragraph by virtue of the provisions of paragraph 408, thereby clearly recognizing that carpets and carpeting provided for in paragraph 407 included mats named in paragraph 408. See also in this connection G. A. 2224 (T. D. 14315) and G. A. 2454 (T. D. 14732).

The Treasury Department in T. D. 13724, dated February, 1893, called attention to a recently decided case in Circuit Court relating to jute rugs. From the language of the opinion of the court, as quoted by the department, it would seem to have been in line with Judge Lacombe's views as above set forth.

We conclude that Congress in reenacting the carpet and rug provisions of the act of 1890 in those of the act of 1894 did not intend to depart from the interpretation thereof that had up to that time prevailed.

While the act of 1894 was in force there does not seem to have been any ruling of the Treasury Department or decision of the Board of General Appraisers that throws light upon the question.

Before the tariff statute of 1897 was enacted, however, it turned out that the views of Judge Lacombe and of the department as to the interpretation of the last clause of the act of 1883 were erroneous, for the Supreme Court, reviewing the judgment of the Circuit Court in an opinion handed down in March, 1895, Beuttell *v.* Magone (157 U. S., 154), supra, reversed the same.

It is presumed that Congress was cognizant of this decision when the tariff statute of 1897 was enacted.

Therein the court, after quoting the statutes, said:

It is clear that rugs in the generic sense are specifically dutiable as such under the foregoing provisions. The imposition of a different duty upon rugs of a particular kind is an exception to the general rule established by the statute. The exception is as "to rugs, screens, covers, hassocks, bedsides, and other portions of carpets and carpetings," which are made to pay the duty imposed on "carpets and carpetings of like character and description." The obvious construction of this language is that which makes the words "other portions of carpets and carpetings" qualify the enumerated articles, and of course, if they be thus construed, only rugs made from "portions of carpets and carpetings" would be subject to the exceptional classification.

*        *        *        *        *        *        *

We think the purpose of the statute, plainly conveyed by its text, was to tax carpets as enumerated therein. That the effect of its language and its intent were also to tax rugs, made as rugs, and clearly distinguishable as such, by reason of their process of manufacture, size, shape, pattern, etc., at the duty imposed on rugs, but to tax rugs made from pieces of carpets or carpetings at the rate imposed on the carpet from which they were made, since, although answering the purpose of a rug, they were really carpeting itself, being made from parts or portions thereof.

And it is upon the last quoted paragraph of the opinion that the Government specially bases its contention.

Had it not been for the presence of the last clause of the statute of 1883, providing for all other mats, rugs, etc., since repealed, we doubt if the court could have reached the conclusion it did, especially if the facts disclosed by the evidence in this case had there appeared. As the statute now stands there is no general provision for all mats, rugs, etc., except in paragraph 303, because paragraph 300 applies only to certain rugs therein named and those that are similar thereto, hence there are now provisions for but two classes of mats, rugs, etc., one being the rugs of paragraph 300, and the other the mats, rugs, etc., of paragraph 303. We think it can not be said that rugs woven whole in the loom in whole or in part of wool are, by reason of the process of manufacture alone, sufficiently similar to the rugs named in paragraph 300 to be brought within its provisions, and besides, if that had been the intent of the paragraph, it could have been clearly indicated by substituting the expression "rugs woven whole" for "similar rugs."

If rugs woven whole in the loom are not covered by either of these paragraphs, a large variety thereof must be taxed under some other provision of the statute notwithstanding the manifest intent to tax *all* rugs, except those provided for in paragraph 300, composed

wholly or in part of wool under some of the paragraphs of the act of 1913 first herein quoted at the rate imposed on carpets or carpeting of like character or description.

The evidence in this case establishes that there are relatively but few made-up rugs, mats, etc., and if the rule of the Supreme Court be adopted as applicable to the present statute, it follows that paragraph 303 so far as rugs and mats are concerned, has but a narrow field for application and in the same connection it may be observed that there would be little scope for the provisions for all carpets or carpeting of like character or description found in so many of the carpet paragraphs.

We conclude that it was the presence in the act of 1883 of the repealed clause that largely induced the Supreme Court to adopt the construction it did and note that if it now be held to be the true interpretation of the present act, a large quantity and variety of rugs woven whole in the loom will take the high rate imposed on Oriental rugs in paragraph 300, which they resemble only in the fact that they are floor coverings wholly or in part of wool, or will be dutiable as manufactures of wool or as nonenumerated articles, either of which conclusions should be adopted only as a last resort.

In United States *v.* Carson, Pirie, Scott & Co. (8 Ct. Cust. Appls., 240; T. D. 37519), we have heretofore distinguished between the issues decided by the Supreme Court in the Beuttell case and here, and refer thereto.

But the Government claims that when the tariff of 1909 was enacted certain other conditions were present from which it must be conclusively inferred that Congress intended to distinguish between made-up rugs and those woven whole in the loom.

This claim rests upon the fact that in G. A. 5517 (T. D. 24857), decided in 1903, the distinction adopted by the Supreme Court in the Beuttell case between such rugs was by the board held to apply to paragraphs 381 and 382 of the act of 1897 so far as cotton rugs were concerned.

It is true the board did apparently so construe those paragraphs, so far at least as related to cotton rugs, notwithstanding the contrary contention of the Government.

We think it is unnecessary to comment upon that case further than to say that, judging from its opinion, the board did not observe that the statute it interpreted was radically different from that before the Supreme Court. This inadvertence may have caused the misapprehension of the rule of that case.

Then, too, the Beuttell case in all its aspects had already presumptively been considered by Congress. It had not reenacted the statute upon which we think the conclusion therein was rested, but had, as we have already tried to point out, amended the same to conform to a contrary view.

Indeed, as we understand its decisions, the board itself subsequently and before the tariff act of 1909 departed from the seeming rule of the Treasury decision last referred to.

To illustrate, it held that art squares were dutiable at the rate imposed on treble ingrain or three-ply carpeting, Abstract 5092 (T. D. 26117), Abstract 10993 (T. D. 27309); that tapestry velvet rugs were dutiable at the rate provided for tapestry velvet carpets, Abstract 10992 (T. D. 27309), Abstract 11197 (T. D. 27348), Abstract 13080 (T. D. 27665).

The meager report of these cases contained in the abstracts does not inform us just how these goods were manufactured, but we think in view of the evidence that appears in this case with reference to the commonly employed methods of their production, it is fair to assume that they were not made-up articles.

We deem it unnecessary to pursue further the question of presumed legislative adoption urged by the Government. The real fact as we glean it from the decisions and rulings is that for at least the period covered by the act of 1909, and probably during an earlier and for a longer period, there was manifest uncertainty as to the proper rate of duty on seamless rugs. The Treasury Department confirms this view, for in T. D. 35062, dated January, 1915, it states that investigation discloses that "there is no uniformity of practice at the various ports in regard to the classification of these rugs."

We think nothing in either the legislative history of the relevant provisions since 1883 or in the administrative practice supports the contention of the Government. The present statute does not justify it. Its provisions are intended to cover all carpets, carpeting and rugs, mats, bedsides, art squares, etc., wholly or in part of wool, and in orderly sequence regulate the duties thereon generally with reference to quality and value, Axminster rugs being regarded as properly classifiable with the most valuable rugs, such as Oriental, Aubusson, and Berlin. Considerable evidence is to be found in the record that several varieties of machine-made Axminsters are in that class.

Other loom-woven rugs are to be dutiable at the rates provided for similar carpets or carpeting, and that a seamless Wilton rug is similar to Wilton carpeting is established. We do not believe their slightly greater cost of production over Wilton carpeting affects their classification. In this view it is unnecessary to consider to what extent these rugs are similar to Axminsters, because they are provided for in paragraph 294 by force of paragraph 303.

There is another consideration here, which should not be overlooked. The Government claims that by the changes made in the act of 1883, in the act of 1890, the provisions for "other similar rugs" was intended to cover the rugs included in the last part of the last paragraph of the act of 1883. It is clear from the evidence

here that the difference between a mat and a rug is practically one of size, and as to that line of demarcation between them the witnesses do not agree. If the Government's contention be adopted, we are unable to see how the mats referred to in paragraph 303 could escape duty under paragraph 300. In addition to this there would arise the perplexing question as to the classification of bedsides, art squares, hassocks, covers, and screens. The evidence clearly establishes that some of these, especially the art squares and bedsides are generally produced in the same manner as are these rugs. If process of manufacture alone excludes rugs from the duty provided in the appropriate carpeting paragraphs, by the same token art squares and bedsides would be likewise excluded, notwithstanding the statute impliedly declares they are portions of carpets and carpetings and expressly provides that they shall be dutiable at the rates provided for such similar fabrics.

The record here shows that made-up rugs are not relatively the subject of commerce to any considerable extent. Neither are such bedsides nor art squares. It is more feasible and cheaper as a commercial proposition to weave them whole on looms as are these Wilton rugs. One of the Government's witnesses testified that the factories did not produce made-up rugs; that they were as a rule made up by the retail dealers to clean out their remnants of carpeting at the close of the season, and this testimony is nowhere disputed.

We do not overlook the fact that there is testimony to the effect that certain sewn rugs, larger apparently than can be woven whole in power looms, are made in the factories, or perhaps we should say, more correctly speaking, that lengths of carpeting or "rug products," as the witnesses have characterized them, are so woven and designed to be sewn together later according to the demands of the trade. The relative extent of such phase of the industry does not appear.

Upon mature consideration of every feature of this case we are of opinion that the judgment rendered by this court in Beuttell & Sons *v.* United States (7 Ct. Cust. Appls., 356; T. D. 36905), supra, was correct and that these rugs are made from portions of carpets or carpeting within the meaning of the present statute and as such dutiable under paragraph 294 of the present act. As was said in that opinion, it is incredible that Congress intended that the "skip of the pile for identification and cutting purposes was the differentiation which cast the goods otherwise included in paragraph 303 into paragraph 300."

There is nothing in the new record to impeach our finding in the first case that there are "similar rugs" to those enumerated in paragraph 300.

The result is that the judgment of the Board of General Appraisers is *reversed.*