UNITED STATES *v.* VANDEGRIFT & Co. (No. 2149).[1]

1. Failure of the importer in a former case to prove a fact should not operate to the disadvantage of an importer who subsequently by a preponderance of credible evidence established the classification for which the earlier importer contended.

2. Issues of fact and the rights of litigants dependent thereon must be adjudicated on the evidence which such litigants see fit to submit to the courts, and the consequences of a lack of proof ought not to be visited in a subsequent case on litigants who were not parties to the original proceedings.

United States Court of Customs Appeals, June 29, 1922.

[Petition for rehearing denied.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

Before DE VRIES, Presiding Judge, and SMITH and MARTIN, Associate Judges.

Per curiam.

The appellant in this case petitions for a rehearing on the ground, first, that the rugs are Axminster rugs, and second, that the decision of this court rendered herein is a reversal of its decision in Beuttell

*v.* United States (8 Ct. Cust. Appls. 419) and United States *v.* Gertzen (8 Ct. Cust. Appls. 428).

In the present case we held that paragraph 300 of the tariff act of 1913 covered both hand-made and machine-made rugs woven whole for rooms as complete single entities, but that it did not include rugs which were portions of carpeting or which were made from carpets or carpeting. We find nothing in the Beuttell case which is either inconsistent or at variance with that holding.

In the Gertzen case the merchandise described as rugs Tozeur and rugs Bulgare was classified by the collector and returned to the board as Axminster rugs.

Rudolph Deutsch, a witness for the importer, said that the rugs were complete chenille rugs, and claimed that they were carpet or carpeting. He further testified as follows:

Q. What is an Axminster rug as understood by the trade?—A. An Axminster rug is a high-price rug made either on a patented Axminster loom or made out of the chenille first and attached to the back, woven on the back.

Q. Does that last description you have given cover this article before you?—A. *Well, it might cover it, but there is a difference between Axminster and chenille. To-day Axminster rugs are only what they call Axminster, all made on a patented Axminster loom.*

Q. (By General Appraiser McCLELLAND.) Do you rest your claim upon the statement that this is a carpet rather than a rug?—A. *Well, I put my claim in that this is a carpet, carpeting; carpet or carpeting. It is not a rug, it is not made wholly for a room, that is my claim.*

Q. *It is your experience that all rugs that are used as such* cover the entire room?—A. *Under paragraph 300; yes.*

Q. I am not talking about paragraph 300, I am talking about rugs.—A. No; they do not cover the entire room. * * *

Q. (By General Appraiser BROWN.) How is Axminster carpeting made as distinct from Axminster rugs?—A. Woven the same as this [sample], only we can weave this 30 yards by changing the picker. We can make 30 yards of the carpet. * * *

This witness furnished little information as to the methods of manufacture and contented himself with stating that the rugs were made on the same loom "which makes carpets." He pointed out at the same time, however, that "you can make carpets any width almost, to 9 feet."

Maurice E. O'Brien, called as a witness *by the importers,* testified that the merchandise was neither carpet nor carpeting, but Axminster rugs, and that as examiner of merchandise he so returned it.

Q. (By Mr. DEUTSCH.) You know the merchandise?—A. Yes.

Q. You returned it at 50 per cent under paragraph 300?—A. I presume that is what I would return it at, by virtue of the proviso of paragraph 303—rugs for floors, and so on.

Q. (By General Appraiser McCLELLAND.) In the condition in which this is imported, is it either carpet or carpeting?—A. No, sir.

Q. What is it?—A. An Axminster rug.

Q. (By General Appraiser BROWN.) Did you return this article, Exhibit 1?—A. Yes, sir.

Q. You passed it under paragraph 300?—A. Yes, sir.

Q. (By Mr. Deutsch.) Wilton rugs, tapestry rugs, and chenille rugs you claim are carpet or carpeting?—A. Yes, sir.

Q. And this is carpet or carpeting?—A. I do not claim anything of the sort. I claim this is specially provided for in paragraph 300, while the others are not provided for under any paragraph except carpet and carpeting. This is the action of this office indorsed by the department.

Q. This paragraph says carpets of every description woven whole for rooms.—A. It also says Axminster rugs.

Q. (By General Appraiser Brown.) Have you ever seen Axminster rugs that are not woven whole for rooms?—A. Yes.

Q. There is a dictionary definition that says they are made mostly for rooms. You think that dictionary is wrong?—A. No; we have Axminster rugs woven whole for rooms.

Q. Some dictionary defines this class of rugs, describing them as rugs woven whole for rooms. If that description is given of Axminster rugs, you say that would not be correct; there would also be Axminster rugs not woven wholly for rooms?—A. Yes, sir.

On this testimony the board found that the rugs were not Axminster rugs, although similar thereto. The board further held that the rugs were machinemade entirely and that the material was woven on a carpet loom and then cut to make rugs, the raw edges being bound and fringed.

The record does not show that the rugs were woven in running lengths which, by cutting at regular intervals and binding the shorter lengths, were converted into rugs. True, Rudolph Deutsch testified that the rugs were woven on carpet looms and that they were carpets or carpeting, but from that testimony it can not be inferred that they were woven in running lengths or that by further manufacturing processes they were converted into the finished product. Carpets and rugs woven whole for rooms as single entities are also woven on carpet looms, and all rugs whether woven whole as single entities or made of running lengths are a kind of carpet or carpeting. Rugs are finished floor coverings and are therefore not carpeting in the sense that they are materials for making rugs and carpets.

On the testimony of one of the witnesses for the importer that the rugs were carpets or carpeting made on carpet looms and of another witness for the importer that they were machinemade Axminster rugs, this court sustained the classification of the collector and held that the merchandise was machinemade Axminster rugs, dutiable under paragraph 300.

The Government contends that there is no evidence that machinemade rugs are ever made singly, and that if so woven they are made according to specifications and are, accurately speaking, not rugs, but carpets woven whole for rooms. The point is in effect a contention that rugs woven whole as complete single entities are not articles of commerce.

We can not agree with the Government that rugs are never woven whole as single entities. Neither can we concede that a floor cover-

ing woven as a complete single entirety according to specifications is necessarily and accurately speaking not a rug, but a carpet woven whole for rooms. Whether a rug is a carpet or a carpet is a rug depends on the floor space covered, and as paragraph 300 provides for carpets woven whole for rooms, it necessarily provides for rugs woven whole as single entities. Indeed, considering that a carpet woven whole according to specifications for a given room becomes a rug when transferred to a larger room, it can not be very well argued that carpets woven whole for rooms are manufactured as articles of commerce, but that rugs which cover only a part of the floor are not manufactured at all.

The rugs in the Gertzen case may have been manufactured in exactly the same way as the rugs involved in the present issue, but if they were, the failure of the importer in the Gertzen case to prove that fact should not operate to the disadvantage of an importer who subsequently, by a preponderance of credible evidence, established the classification for which the earlier importer contended. Issues of fact and the rights of litigants dependent thereon must of necessity be adjudicated on the evidence which such litigants see fit to submit to the courts, and it is apparent that in justice the consequences of a lack of proof ought not to be visited in a subsequent case on litigants who were not parties to the original proceedings.

Petition for rehearing denied.