## BEUTTELL *v.* MAGONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 118. Argued December 19, 1895. — Decided March 11, 1895.

A request made to the court by each party to instruct the jury to render a verdict in his favor, is not equivalent to the submission of the case to the court without the intervention of a jury, within the intent of Rev. Stat. §§ 649, 700.

When each party asks the court to instruct a verdict in his favor, it is
equivalent to a request for a finding of facts, and if the court directs the
jury to find a verdict for one of them, both are concluded on the finding
of facts.

Under the tariff act of March 3, 1883, c. 120, rugs made as rugs, and dis-
tinguishable as such by reason of their process of manufacture, size,
shape, pattern, etc., were subject to the duty imposed upon rugs; and
rugs made from pieces of carpets or carpetings, to the rate imposed upon
the carpet from which they were made.

In March, 1887, the plaintiff in error imported a lot of rugs.
They were classed by the custom authorities as "Tournay
velvet carpets," and, as such, held subject to a duty of forty-
five cents per square yard and 30 per cent *ad valorem*. The
importer protested against this levy, and claimed that the
merchandise was only dutiable at 40 per cent *ad valorem*.
The collector refusing to entertain the protest, appeal was in
due time prosecuted to the Secretary of the Treasury, and
upon adverse decision suit was brought to recover the differ-
ence between the duty enforced by the collector and that
which the importer conceded to be due. The controversy
depends on the proper construction of parts of the tariff act
of March 3, 1883, c. 120, 22 Stat. 487; which was in force at
the time of importation.

On the trial of the case two witnesses were examined, one
the importer, in his own behalf, the other a witness on behalf
of the government. The testimony of the importer was, sub-
stantially, to the effect that the rugs in question were not
pieces of carpet or rugs made from pieces of carpet, but were
rugs woven as such; that they were of various sizes, viz.,
thirty-six inches long by eighteen wide, thirty-six inches long
by thirty-six inches wide, fifty-four inches long by twenty-seven
inches wide, sixty-three inches long by thirty-six inches wide,
or seventy-two inches long by forty-four inches wide. The
differences between Wilton carpet and the rugs, as to mode of
manufacture, as to material used, and when completed, were
stated thus: The rugs were made upon a loom of six frames,
whilst Wilton carpet was made upon one of five or less, so
that looms fitted for making the rugs were unsuited for making
Wilton carpet. The material used in the weft of the rugs was

different from that which was used in a Wilton carpet, and the worsted in one was also of a different quality from that used in the other. The rugs in question, he said, were woven with cotton backs, in order to make them soft, whilst Wilton carpet was woven with a jute and linen back. The design of Wilton carpet and that of the rugs were also stated to be entirely different, the one being made to match various lengths, the other being one pattern for the entire rug. He testified that the rugs were sold by the rug, and not by the yard, and were called Wilton-Daghestan rugs, because they were "a plush fabric." He described a plush fabric as one wherein the worsted in weaving was cut with a knife, so as to leave a plush surface, and declared that Saxony, Axminster, Moquette velvet, and tapestry velvet carpets were also plush fabrics, because their threads were cut so as to make the surfaces like plush. In this sense there was a similarity between the rugs in question and Wilton carpet, that is, they were both plush fabrics, although in other respects there existed the differences already recited. The witness, moreover, said that the name given to the articles " Wilton-Daghestan rugs," in no way indicated that they were made from Wilton carpet, but simply signified that they were a plush fabric. There were two exhibits in the case which were shown the witness, one a sample of the rugs in question, and the other a rug or "bedside," made from a piece of Wilton carpet ; he indicated in these the differences above pointed out, and also stated the general similarity which they bore to each other by reason of their being both "plush fabrics."

The witness for the government, after giving his experience in the carpet trade, stated that articles like those imported were known to the trade as " Wilton rugs." He added : " A Wilton is a Brussels carpet cut. It is a plush carpet more correctly speaking."

On the close of the testimony, counsel for plaintiff moved the court to direct a verdict in his favor, "there seeming to be no material dispute on any point in the case." Counsel for defendant also asked the court " to direct a verdict for defendant on the whole case." The court thereupon directed

the jury to find a verdict for defendant. To this instruction exception was taken and allowed, and the case was thereupon brought here by error. The bill of exceptions contains all the evidence. The opinion of the court below is reported in 48 Fed. Rep. 147.

*Mr. Edwin B. Smith* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The contention is advanced that as each party below requested the court to instruct the jury to return a verdict in his favor, this was equivalent to a stipulation waiving a jury and submitting the case to decision of the court. From this premise two conclusions are deduced; first, that, there being no written stipulation, the decision below cannot be reviewed upon writ of error; second, that, even if the request in open court, made by both parties, be treated as a written stipulation, the correctness of the decision below cannot be examined, because it is in the form of a general finding on the whole case, and findings of the court upon the evidence are reviewable only when they are special.

The request, made to the court by each party to instruct the jury to render a verdict in his favor, was not equivalent to a submission of the case to the court, without the intervention of a jury, within the intendment of Rev. Stat. §§ 649, 700. As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if

there be any evidence in support thereof.   *Lehnen* v. *Dickson*, 148 U. S. 71 ; *Runkle* v. *Burnham*, 153 U. S. 216.

There was obviously no disputed question of fact.    The plaintiff introduced proof tending to show that the rugs had been woven as rugs on a loom prepared for that purpose, and which was therefore not suitable for weaving carpeting ; that they contained materials used in making rugs which were not the kind or quality of materials used in making carpets ; that their size, shape, pattern, back, and other qualities made them distinctly rugs *eo nomine* as distinguished from rugs made "from portions of carpet or carpeting."   From this evidence was deduced the conclusion of law that they were dutiable as rugs at 40 per cent *ad valorem*.   Defendant's testimony tended to show that the rugs were called Wilton rugs, were a plush fabric, (which was not traversed by the plaintiff's testimony,) and hence were of a "like character and description" with Wilton carpet.   Upon these facts the defendant based his claim that as matter of law they were dutiable at the rate imposed on such carpets.   From this undisputed evidence, then, arose the legal question whether rugs of the kind stated, not being "portions of carpet or carpeting," were taxable as Wilton carpets, because they were of like character or description, that is, because they were plush fabrics.   Wilton carpets were also a plush fabric.   The correctness of the ruling below depends upon an interpretation of the language of the statute which we quote :

"Saxony, Wilton, and Tournay velvet carpets forty-five cents a square yard, and in addition thereto 30 per centum *ad valorem*.   .   .   .   Carpets and carpetings of wool, flax, or cotton, or parts of either, or other material not otherwise herein specified, 40 per centum *ad valorem;* and mats, rugs, screens, covers, hassocks, bedsides, and other portions of carpets and carpetings shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description; and the duty on all other mats not exclusively of vegetable material, screens, hassocks, and rugs shall be forty per centum *ad valorem*."   22 Stat. 509, 510.

It is clear that rugs in the generic sense are specifically

dutiable as such under the foregoing provisions. The imposition of a different duty on rugs of a particular kind is an exception to the general rule established by the statute. The exception is as "to rugs, screens, covers, hassocks, bedsides, and other portions of carpets and carpetings," which are made to pay the duty imposed on "carpets and carpetings of like character and description." The obvious construction of this language is that which makes the words "other portions of carpets and carpetings" qualify the enumerated articles, and of course if they be thus construed, only rugs made from "portions of carpets and carpetings" would be subject to the exceptional classification.

It is urged that this interpretation is erroneous, because the limiting words "other portions of carpets and carpetings" simply qualify the last of the enumerated articles, that is, the word "bedside," and none other. It is self-evident that the qualifying words must be held to relate to some of the items embraced in the enumeration which they qualify. To hold otherwise would be to read them out of the statute. Do they qualify all or one is the question. To hold that they qualify only one of the items of the enumeration is to make that item an exception, and therefore make the statute operate an absurdity. If the qualifying words only apply to "bedsides," then all the other items enumerated, viz., "mats, rugs, screens, covers, and hassocks," are dutiable at the rate imposed on "carpets and carpetings of like character and description," although they be not made from "other portions of carpets and carpetings," whilst "bedsides," whatever may be their similarity to "carpets or carpetings," will only be dutiable at the rate of carpets and carpetings if made from pieces of carpets. It cannot be supposed the intention of the statute was to operate this inequality or to work out this unjust result. The articles are all enumerated together, and the manifest purpose is that all of them shall pay a like duty under similar conditions. We cannot violate the express language in order to dissociate things classed together by the law, and thus make one of the class subject to a higher duty than the others, although they be of like character and description.

We think the purpose of the statute, plainly conveyed by its text, was to tax carpets as enumerated therein. That the effect of its language and its intent were also to tax rugs, made as rugs, and clearly distinguishable as such, by reason of their process of manufacture, size, shape, pattern, etc., at the duty imposed on rugs, but to tax rugs made from pieces of carpets or carpetings at the rate imposed on the carpet from which they were made, since, although answering the purpose of a rug, they were really carpeting itself, being made from parts or portions thereof. A construction contrary to that which we thus reach having been adopted by the court below, its judgment is

*Reversed, and the case remanded with directions to grant a new trial.*