## AMERICAN MERCANTILE CORPORATION v. SPIELBERG.

(Circuit Court of Appeals, Second Circuit. December 2, 1919.)

### No. 11.

1. BROKERS ⬅60—WHERE DEAL FAILED WITHOUT FAULT OF PRINCIPAL THERE IS NO RIGHT TO COMMISSIONS UNDER CONTRACT CALLING FOR PAYMENT FROM FINAL PAYMENT BY PURCHASER.

Under a contract by defendant to pay plaintiff as broker a commission on the sale of a ship, if his offer was accepted "and the deal consummated, * * * when the full purchase price is paid to me, from the final payment," defendant *held* not liable for commission where, although a contract of sale was entered into, through no fault of defendant it could not be carried out, and was afterward canceled by the parties.

2. APPEAL AND ERROR ⬅997(3)—FINDINGS ON MOTIONS BY BOTH PARTIES FOR DIRECTED VERDICT CONCLUSIVE.

In an action at law, where at the end of the trial both parties move for a directed verdict, both are concluded by the findings of the court on all issues of fact.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the American Mercantile Corporation against Harold Spielberg. Judgment for defendant, and plaintiff brings error. Affirmed.

The American Mercantile Corporation is a corporation organized under the laws of the state of Delaware. The defendant, Spielberg, is a citizen of the state of New York, residing in the Southern district of that state.

The defendant was the owner of an undivided half interest in the American steamship Fordonian, subject to said vessel being security to the Equitable Trust Company for a loan amounting to approximately $310,000; the owner of the other half interest being A. W. Duckett & Co., Incorporated, which company was in the hands of a receiver appointed by the United States District Court in the Southern District of New York. The defendant's half interest in the Fordonian had been secured by obtaining the loan above mentioned from the Equitable Trust Company, which was made upon the note of A. W. Duckett & Co., Incorporated, indorsed personally by A. W. Duckett and by defendant, and secured by a bill of sale of the vessel to Arthur A. Miller, nominee of the Equitable Trust Company. The loan became due December 27, 1917, at which time notice of its nonpayment was given to defendant by the Equitable Trust Company; and on January 7th notice was sent to defendant that if the note was not paid on or before January 10, 1918, legal proceedings would be brought against him immediately for its collection. These facts become important in explaining why it was that the contract of sale, subsequently referred to, could not be consummated.

The complaint alleges that on January 8, 1918, the defendant, who represented himself to have in charge for sale as owner or otherwise the steamship Fordonian, requested plaintiff, as broker, to produce a purchaser for said property for the sum of $540,000 and the defendant agreed to pay to the plaintiff for services as a broker in said transaction 5 per cent. of the said purchase price or the sum of $27,000.

It appears that on January 8, 1918, the defendant wrote to the plaintiff as follows:

"I am informed that you have some people who are interested, or may become interested, in the purchase of the steamship Fordonian, in which I have an undivided half interest, and the sale of the entire boat I am in a position to control. I am willing to sell that boat for the sum of five hundred and forty thousand dollars ($540,000), in cash, free and clear from all liens, mortgages, or incumbrances of any kind or description whatsoever.

"Said boat is to be delivered subject to a bare boat form charter between the present owners of the boat and the United States government. The boat is 3,800 tons dead weight, paying at the rate of $15,770 a month. I will deliver that boat, rated A-1, British corporation, will deliver a certificate of seaworthiness, and in the shape and condition, as required by the United States government, bare boat form charter.

"If you accept my offer, I will ask you to deposit 10 per cent. at the Metropolitan Trust Company of the City of New York, and will undertake to deliver title within one week from to-day. This option is good until 5 p. m. January 8, 1918."

On the same day the plaintiff communicated defendant's offer to the Metropolitan Trust Company. The latter company on the same day addressed a letter to the defendant, in which it said:

"We hereby beg to accept your offer, subject to the verification by an inspection of the representations regarding the boat made in your offer, and your additional representations made over the telephone to our representative this afternoon, viz. the vessel's guaranteed fuel capacity to be not less than 203 tons of fuel oil, consumption of fuel not to exceed 4 tons of fuel oil per 24 hours based on a speed of 9 to 10 knots in fair weather; also, subject to the compliance on the part of the present owners of all terms and conditions of the bare boat form charter, which we understand you are now about to enter into for this vessel with the United States government or their agents; and it is understood that said vessel is to be delivered to us, subject to this charter,

fully complied with, by the present owners, and subject to the approval of the United States to this sale.

"We are informed by you that the vessel is now lying at Bordeaux, France, where she is available for our inspection. If this is correct, we will cable at once and arrange for immediate inspection at that port, to be completed and confirmed by cable advices to us within six days from this date. If said inspection confirms the representations you have made to us as outlined in your offer and hereinabove, you are to deliver title of the boat to us within 24 hours thereafter, upon payment to you or your order of the purchase price, $540,000.

"The 10 per cent. deposit referred to in your offer, to wit, $54,000, has been made and is now held by us in escrow, subject to the terms of this agreement, to be paid to you upon the completion of the purchase under the terms herein above stated."

On the same day defendant wrote to the plaintiff a letter which read as follows:

"Gentlemen: If my offer given this day to your corporation, is accepted by 5 o'clock this afternoon, and the deal consummated, I agree to pay you 5 per cent. commission, the amount to be paid over to you when the full amount of the purchase price is paid over to me, from the final payment."

It is alleged that the plaintiff procured a responsible purchaser, the Metropolitan Trust Company of the City of New York, which was acting for the Cosmopolitan Shipping Company, and that said purchaser was ready and willing and anxious to purchase the boat in accordance with terms agreed upon, yet the defendant failed to carry out the conditions he had agreed to perform, and voluntarily released by an instrument in writing the Metropolitan Trust Company from its obligation to purchase. It is also alleged that the release of the Metropolitan Trust Company from its agreement was due solely to the inability or failure of defendant to perform the agreements upon his part to be performed, and not to any fault or defect upon the part of the purchaser so obtained by the plaintiff. The complaint stated that the plaintiff was entitled by reason of the facts aforesaid to recover from defendant his commission in the sum of $25,000, and he demanded judgment in that amount, with interest thereon from January 18, 1918.

The defendant represented and agreed that the vessel was at Bordeaux, France, and was there available for inspection, and that he would deliver the vessel, free and clear of all liens, subject to a bare boat form charter to the United States government, and in the shape and conditions as required by the United States government bare boat form charter, and would deliver a certificate of seaworthiness. After this agreement was made it was ascertained that the boat was not at Bordeaux, and during the six-day period above mentioned the vessel was not available for inspection. Thereafter the Metropolitan Trust Company was ready to accept the boat and carry out the conditions of the contract, waiving the inspection, upon satisfactory assurance that the boat was in the shape and condition as required by the United States government bare boat form charter, and upon delivery of certificate of seaworthiness; but it is alleged that defendant refused to carry out the terms and conditions he had agreed to perform.

The purchaser wanted the vessel, and negotiations were continued between defendant and the proposed purchaser, until late in the afternoon of January 17th, when, upon the refusal of defendant to extend the time to permit inspection or to accept any substitute therefor, defendant and the purchaser canceled the agreement of sale and purchase without the plaintiff's consent. The circumstance which prevented the extension of time asked for was that the note given to the Equitable Trust Company, already referred to, and for which that company held a bill of sale of the vessel, was past due, and notice had been given by that company that, if the note was not paid by January 10, 1918, legal proceedings would be taken immediately for its collection. The defendant could not give any extension of time to the would-be purchaser, inasmuch as the Equitable Trust Company refused to give defendant any extension of time in connection with the payment to it of his note, although the defendant and the would-be purchaser united in applying for it, so that an inspection of the boat might be had, which inspection had been made impossi-

ble, according to the terms of the original agreement, by the fact that the boat was not at Bordeaux, as all the parties concerned had believed at the time the original agreement was made.

William Dewey Loucks, of New York City (Dorman T. Connet, of New York City, on the brief), for plaintiff in error.

Hunt, Hill & Betts, of New York City (George C. Sprague, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] The general rule is well established that, if by the contract of employment a broker is simply to find a customer who is able, ready, and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Kock v. Emmerling, 22 How. 69, 16 L. Ed. 292; Handley v. Shaffer, 177 Ala. 636, 651, 59 South. 286; Blakeslee v. Peabody, 180 Mich. 408, 147 N. W. 570; Beougher v. Clark, 81 Kan. 250, 106 Pac. 39, 27 L. R. A. (N. S.) 198; 9 C. J. 591. That proposition seems to be recognized by all the courts. It certainly is not questioned in this court. In many cases, however, the right of a broker to his commission depends on the final consummation of the transaction which he was employed to negotiate.

This court had the matter under consideration in Hammond v. Crawford, 66 Fed. 425, 14 C. C. A. 109. A paper signed by the broker stated that his understanding was that, in case he effected a sale or deal of certain mines, he was to have a certain compensation. The broker's intervention did not result either in a completed sale or in an enforceable agreement for sale. This court held that the broker was not entitled to his commission.

In Holton v. Job Iron & Steel Co., 204 Fed. 947, 123 C. C. A. 269, the defendant agreed to pay to plaintiff a specified commission "if this deal is put through." The Circuit Court of Appeals in the Sixth Circuit held that the term "put through" meant to carry or conduct to a successful termination, and that, the plaintiff's engagement being, not merely to obtain a party able and willing to enter into a given contract, but to bring the transaction about, and not having done so, he was not entitled to recover.

In Hale v. Kumler, 85 Fed. 161, 29 C. C. A. 67, the same court denied in a like case the right of the broker to his commissions. In that case the court held that where a broker was to become entitled to commissions only upon bringing about a completed agreement between his principal and a third party, he could not recover upon proof of a preliminary and tentative agreement upon certain elements of the proposed agreement which were afterwards abandoned by the principal and without fault. "The condition," said Judge Lurton, "upon which Kumler is entitled to recover compensation has not been fulfilled, and, as he has not been prevented from its performance by the wrongful conduct of Hale, the latter is entitled to rely upon the nonperformance of the condition."

The instant case is not distinguishable in principle from the cases just above cited. In the present case the agreement between plaintiff and defendant reads as follows:

"If my offer given this date to your corporation is accepted by 5 o'clock this afternoon, and the deal consummated, I agree to pay you 5 per cent. commission, the amount to be paid over to you when the full amount of the purchase price is paid over to me, from the final payment."

There can be no doubt as to the meaning of this agreement. It is clear and unequivocal. "Consummate," according to the Century Dictionary, means:

"To finish by completing what was intended; perfect; bring or carry to the utmost point or degree; carry or bring to completion; complete; achieve."

The agreement contemplated the actual sale of the vessel and the payment of the purchase money to the defendant as a condition precedent to the right of the plaintiff to any commissions; and as the broker's services did not effect either a completed sale or an enforceable agreement for sale, he is not entitled to the commission offered him in the letter of January 8th, already quoted.

If it appeared that consummation of the agreement was prevented by the wrongful conduct of the principal we should be obliged to hold that the broker was entitled to his commissions. Counsel for the plaintiff in his brief and argument in this court has laid great stress upon an agreement which the defendant made on January 16, 1918, with other parties for the sale of the vessel for $550,000 or $10,000 more than the price which defendant offered to sell the boat for in his letter of January 8, 1918. The agreement of January 16th mentions the agreement of January 8th, and states that the second agreement is only to become effective in case the first agreement is not carried out. We have given this second agreement full consideration in all of its aspects and have examined carefully the circumstances under which it was made, and we fully agree that no blame attaches to the defendant for entering into it. The situation as it existed at the time it was made, and which we do not need to go into at length, fully justified its making.

The defendant acted in entire good faith throughout the whole of the negotiations, and the testimony not only shows beyond doubt that this was the case, but it shows, also, that the officers of the Cosmopolitan Shipping Company believed that there was entire good faith. The testimony of the vice president of that company disposes of the matter, as the following excerpt shows:

"Q. Now, Mr. Munez, did Mr. Spielberg, at any time, throw any obstacle in your way of consummating the sale of this ship? A. Not as far as I could see; no.

"Q. Did he, so far as you know, do everything that he could to have the sale consummated? A. As far as I know he did; yes."

The attorney for the purchaser who prepared the letter of January 8th and gave advice throughout the negotiations, and who did not in any way represent the defendant, gave the following testimony:

"Q. And did he [the defendant], so far as you know, do everything in his power to bring about the consummation of the sale of this ship? A. That was my impression, sir."

[2] However, even if we did not agree with the findings of the court below on this question of the defendant's good faith, we should nevertheless be concluded by those findings. The plaintiff and defendant both moved for the direction of a verdict at the end of the trial, and so both parties are concluded by the findings on all issues of fact; this being neither an admiralty nor an equity suit. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; United States v. Two Baskets, 205 Fed. 37, 123 C. C. A. 310.

Judgment affirmed.

WARD, Circuit Judge (dissenting). In this case the plaintiff, as broker, not only produced a purchaser ready, willing, and able to buy the steamer Fordonian for $540,000, but a contract by correspondence was entered into by him with the defendant January 8, 1918, expressing all the terms of sale, and the purchaser deposited $54,000 of the purchase money in escrow.

The defendant owned only one-half the steamer, but was under contract to purchase the other half. The second letter of January 8th, quoted in the opinion of the court, was accepted in writing by the defendant. One of its terms was the defendant's statement that the steamer was at Bordeaux, where the purchaser could have her inspected for the purpose of confirming the defendant's representations in respect to her within 6 days thereafter. Within 24 hours thereafter, if the inspection confirmed the representations, the defendant covenanted to deliver a bill of sale, and the purchaser covenanted to pay the purchase price. In a commercial contract like this, the representation that the steamer was at Bordeaux was a warranty. See our decision in Dorrance v. Barber, 262 Fed. 489, —— C. C. A. ——. In point of fact, the steamer was not at Bordeaux, and could not be inspected within six days, and because of this breach of warranty the purchaser could have withdrawn from the contract. Being, however, very anxious to carry it out, the purchaser offered to extend the time for inspection. The defendant could not do so, because he had, for want of funds, failed to complete his purchase of the other half of the steamer. It will thus be seen that, while the defendant had no contract which he could enforce, his purchaser had an enforceable contract for damages against him. The sale was not consummated because of the defendant's default. The fact that the parties to it subsequently exchanged mutual releases, and that the defendant was not guilty of bad faith, cannot affect in any way the plaintiff's right to its commission under its independent contract with the defendant. If the purchaser, instead of releasing, had sued the defendant for breach of contract, and had recovered judgment, the contract could not be said to have been consummated, and the defendant would not have received the final payment out of which the commission was to come; but I think no one would deny the plaintiff's right to his commission.

I think the court should have directed a verdict for the plaintiff.