UNITED STATES *v.* TRORLICHT, DUNCKER CARPET CO. ET AL. (No. 2027).[1]

1. RUGS MADE FROM "PORTIONS OF CARPETS OR CARPETING."—PARAGRAPH 303, TARIFF ACT OF 1913.

The expression "rugs for floors * * * and other portions of carpets or carpeting * * * ," paragraph 303, tariff act of 1913, includes long rolls of carpeting intended to be cut at places indicated in the weave, each piece, after being cut, to be bound and fringed into a finished rug.—Beuttell & Sons *v.* United States (7 Ct. Cust. Appls., 356; T. D. 36905).

2. PARAGRAPHS 300 AND 293, TARIFF ACT OF 1913—"AXMINSTER" RUGS—HISTORY OF RUG MAKING—COMMERCIAL DESIGNATION.

While originally there was no such thing as a machine-made Axminster rug or carpet, as is shown by a review of the history of rug making, it appears that, at the time of the passage of the tariff act of 1913, the trade of this country generally and uniformly included in the designation "Axminster" both the handmade and the machine-made Axminster.

3. PARAGRAPH 293, TARIFF ACT OF 1913—"CHENILLE" CARPETS OR RUGS.

A review of the history of the subject shows that originally and now the term "chenille" (par. 293, tariff act of 1913) was and is commonly and properly used to distinguish that kind of carpet or rug from all other kinds. No contrary commercial designation appears at the time of the enactment of the tariff act of 1913. It is therefore concluded that the act of 1913 differentiates between chenille and Axminster carpets and rugs.

4. CHENILLE RUGS.

As chenille rugs are made from portions of chenille carpets or carpeting, and are not enumerated in paragraph 300, they are dutiable under paragraph 293, by virtue of paragraph 303, tariff act of 1913.

5. HANDMADE "IDAHO," "KERBELA," "BEIRUT" AND "CALCUTTA" RUGS—CARPETS WOVEN WHOLE FOR ROOMS FROM SPECIFICATIONS—MACHINE MADE CHENILLE RUGS.

Certain handmade rugs known as "Idaho," "Kerbela," "Beirut" and "Calcutta" and certain rugs shown to be carpets woven whole for rooms from specifications are dutiable under paragraph 300, tariff act of 1913, and the machine-made chenille wool rugs of the importations, not "woven whole for rooms" are dutiable by virtue of paragraph 303, at the rate imposed on chenille carpets by paragraph 293.

United States Court of Customs Appeals, February 4, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8314 (T. D. 38236).

[Modified.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Sharretts, Coe & Hillis* for appellees.

[Oral argument Nov. 5, 1920, by Mr. Lawrence and Mr. Sharretts.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Rugs made of chenille, classified by the collector of customs as Axminster rugs and carpets woven whole for rooms, were assessed

---

[1] T. D. 38618 (40 Treas. Dec., 68).

for duty at 50 per cent ad valorem under the provisions of paragraph 300 of the tariff act of 1913, which is as follows:

300. Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem.

The importers protested that the goods were neither rugs of the kind enumerated in paragraph 300 nor carpets woven whole for rooms within the meaning of that provision, but that they were chenille rugs, composed wholly or in part of wool, dutiable by virtue of paragraph 303, at the rate imposed on chenille carpets by paragraph 293.   Paragraphs 303 and 293 read as follows:

303. Mats, rugs for floors, screens, covers, hassocks, bed sides, art squares, and other portions of carpets or carpeting, composed wholly or in part of wool and not specially provided for in this section, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description.

293. Aubusson, Axminster, moquette, and chenille carpets, figured or plain, and all carpets or carpeting of like character or description, 35 per centum ad valorem

The Board of General Appraisers sustained the protest, and the Government appealed.

The rugs involved in this appeal are made of chenille and are woven, as are carpets in running lengths, containing the material for the making of from 20 to 40 rugs.   The running lengths are cut at the points indicated by the weave and the pieces so produced are "portions of carpets or carpeting," until they are bound or fringed and thereby converted into finished rugs.   The rugs are therefore made from "portions of carpets or carpeting," and unless otherwise more specifically provided for are dutiable as prescribed by paragraph 303.—Beuttell *v.* Magone (157 U. S., 154, at pp. 158 and 159); Beuttell & Sons *v.* United States (7 Ct. Cust. Appls., 356; T. D. 36905).

The Government, however, contends that the goods are provided for eo nomine by paragraph 300 as Axminster rugs, or as carpets woven whole for rooms, and that consequently they are subject to the duty of 50 per cent ad valorem which that paragraph imposes.

It is not disputed that Axminster rugs and carpets were first produced by hand, and that originally there was no such thing as a machine-made Axminster rug or carpet.   The manufacture of machine-made rugs and carpets did not begin in Europe until about the year 1831, long after the invention by Cartwright of the first successful power loom.   Such rugs and carpets were not made in this country until after the invention by Erastus Bigelow, in 1841, of a power loom which turned out rugs and carpets similar to the hand-made Axminster, and which were called "moquette."   Some 20 years ago the name "moquette" appears to have been abandoned, and all rugs and carpets made on power looms, similar to

handmade Axminster, were designated by the trade and commerce of the country as Axminster rugs and carpets. It may, therefore, be concluded that at the time of the passage of the act of 1913 the trade of this country generally and uniformly included in the designation "Axminster" both the handmade and the machine-made Axminster.

About the year "1836" Alexander Buchanan, foreman of a shawl factory in Paisley, Scotland, contributed to the market a novelty in shawls, the weft of which was chenille and not yarn. The chenille was made by weaving yarns of various colors into a fabric or blanket and cutting the fabric or blanket into thin strips, which were then passed over heated rollers, thereby acquiring a caterpillarlike form, and consequently the name "chenille," the French for caterpillar. James Templeton, a neighboring manufacturer of shawls, was much impressed by the fact that the chenille shawls were very similar in appearance to the tufted-pile carpets, woven by hand in the East, and in "1838," after four years of experiment, he set himself to the making of carpets having a weft of chenille. In Scotland such carpets were first called chenille carpets and later Patent Axminsters, although they differed radically from Axminsters in manufacture and even in appearance when closely examined. See "The Textile Industries" (William S. Murphy), 151, 153.

The testimony of Francis Way, a Government witness, indicates that rugs and carpets of chenille were not made *in this country* until about 20 years ago, and that they were called chenille Axminsters to distinguish them from spool Axminsters, a machine-made imitation of the handmade Axminster. The Axminster rug or carpet was not a moquette, which was a French handmade velvet floor covering, and the witnesses on both sides are agreed that the rug or carpet of chenille was neither a true handmade nor a true machine-made Axminster. That chenilles were given the name of rugs and carpets made in an entirely different way, and which admittedly they did not resemble except at a distance and to the eye of the casual observer, must be attributed in the light of the evidence and literature on the subject to a business policy which induced manufacturers and dealers to give a novelty in machine-made carpets the designation of some handmade article already established in popular favor, and to abandon the name if it proved to be disadvantageous. But whatever may have been the policy of the trade, it is certain that the carpets first made of chenille bore the name of chenille carpets, and that that designation distinguished them effectively from all other carpets. Indeed, we may well say that they were originally and are now properly and commonly so denominated.

Several varieties of carpets are named from their material; as chenille carpet. (See Standard Dictionary.)

*Chenille carpet,* a carpet in which the weft is of chenille instead of yarn. The pattern is dyed in the chenille itself, nothing showing at the surface of the carpet but the ends of the chenille fringe. (See Carpet—Century Dictionary and Cyclopedia.)

*Chenille carpet.*—The chenille carpet is soft and beautiful, but costly. In making it the warp threads are stretched out horizontally, as in a common loom, and the weft is thrown in by a shuttle; but this weft consists of chenille, instead of mere yarn, and when the weaving is completed, the loose, colored threads of the chenille are combed up and made to appear at the surface, where they are cut and sheared to a state of velvety softness. The pattern is dyed in the chenille itself, nothing appearing at the surface of the carpet except the ends of the chenille fringe. (See Chenille Carpet—Knight's American Mechanical Dictionary, p. 535.)

The Government makes the point, however, that the rugs in issue became known to the trade as "Axminsters," and that therefore they must be classified as Axminsters for tariff purposes, whatever they may be in fact and whatever may be their common ordinary designation. In support of that position attention is called to testimony which it is claimed tends to establish that, ever since rugs and carpets of chenille were first produced in this country, they have been designated by the trade as chenille Axminsters and bought and sold by the trade under that name. Unfortunately for appellant's contention, however, it further appears that due to the fact that domestic Axminsters came to be made "in inferior qualities," the word "Axminster" was dropped from the designation about the year 1904, and that thereafter rugs made of chenille were called by the trade, "more largely," chenille rugs. Government witnesses Way and Walker say that the word "Axminster" was eliminated for brevity's sake, but that influence can hardly be regarded as predominant, in view of Walker's definite statement that the word "Axminster" was left out in order to avoid its depreciating effect on the chenille fabric and the confounding of chenille rugs with domestic Axminsters of inferior quality.

Walker's testimony fully justifies the conclusion that in large part the trade found the term "Axminster" a disadvantage to the chenille grade of rugs, and that the name chenille rugs was adopted to distinguish them from machine-made Axminsters. That view of the trade purpose is confirmed by the fact that in the advertisement of various grades of rugs Axminsters were listed as "Genesee Axminster rugs," "Seneca Axminster rugs," and "Auburndale Axminster rugs," whereas rugs of chenille were announced as "seamless chenille rugs." Chenille carpets and Axminster carpets were recognized as separate and distinct tariff entities as early as the act of 1883. After 1883 the trade may have given to chenilles the trade name of "Axminsters," but if it did it can not be presumed that that trade designation continued to the passage of the tariff act of 1913, inasmuch as paragraph 293 of that act provided separately for chenille carpets and Axmins-

ter carpets, just as did the act of 1883. As chenille carpets and Axminster carpets are separately enumerated in said paragraph 293, and as chenille rugs are admittedly made in the same way as chenille carpets, differing from the latter at most only to the extent that they are made in one piece and designed to cover a portion of the floor, we must conclude that in the act of 1913 Congress differentiated between chenille carpets and Axminster carpets, and consequently between chenille rugs and Axminster rugs. Moreover, the testimony on the part of the Government very clearly establishes that for the last 15 years the trade in large part has not used the designation "chenille Axminster" because of the inferiority of Axminsters and the depreciating effect of the word "Axminster" on the chenille grade of goods. We must, therefore, hold that on the passage of the act of 1913, and for eight or nine years prior thereto, rugs and carpets of chenille were not generally or uniformly known to the trade as chenille Axminsters.

As chenille rugs are made from portions of chenille carpets or carpeting, and are not enumerated in paragraph 300, they are dutiable under paragraph 293 by virtue of paragraph 303, inasmuch as they are not otherwise more specifically provided for.

Protest 774616 did not claim that the goods were dutiable under paragraph 293.

On the hearing before the board protest 774617 was abandoned, and the contention as to classification made by protest 791560, entry 37903, was waived. It was admitted, first, that the goods covered by protest 760254, entries 31536 and 44104, were carpets woven whole for rooms from specifications; second, that the rug known as "Kerbela," included in protest 774296, entry 192565, was a handmade rug; third, that the "Idaho" rug, covered by protest 779117, entry 214615, was a handmade rug; fourth, that the "Beirut" rug, covered by protest 779436, entry 234955, was a handmade rug; fifth, that the "Idaho" and "Calcutta" rugs, covered by protest 785480, entry 292886, were handmade rugs. It was also admitted on the argument of the appeal that bale 4404, covered by protest 760254, contained a handmade "Idaho" rug or rugs. As the several items covered by the admissions are either carpets woven whole for rooms from specifications or handmade rugs, they are not portions of carpets or carpeting or made from portions of carpets or carpeting, and must be held to be dutiable as assessed, inasmuch as they are not covered by any of the paragraphs claimed in the protests.

The decision of the board as to protests 771168, 774616, 774617, and 774915 is affirmed. The decision of the board is reversed, first, as to the handmade "Idaho" rug or rugs, in bale 4404, covered by protest 760254, entry 23316; second, as to the carpets woven

whole for rooms from specifications and covered by protest 760254, entries 31536 and 44104; third, as to the handmade "Kerbela" rug or rugs, covered by protest 774296, entry 192565; fourth, as to the handmade "Idaho" rug or rugs, covered by protest 779117, entry 214615; fifth, as to the handmade "Beirut" rug or rugs, covered by protest 779436, entry 234955; sixth, as to the "Idaho" and "Calcutta" rugs, covered by protest 785480, entry 292886. In all other particulars the decision of said board as to said protests is affirmed.

*Modified.*