GOSHO CO., Inc., v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Fifth Circuit. December 8, 1922.)

No. 3897.

1. Appeal and error ⟨⟩997(3)—Directed verdict after request of both parties sustained, if supported by any evidence.

Where both parties moved for a directed verdict, and no further request was made, the judgment of the District Court must be affirmed, if there is any evidence to support the verdict directed, unless some error of law is shown.

2. Carriers ⟨⟩47(2)—Railroad not bound by representation of its agent as to shipping rates.

A railroad company is not bound by the representation of its agent made to a prospective shipper, with whom no contract of carriage had yet been entered into, relative to the procurement of cargo space for an ocean shipment at specified rates.

3. Carriers ⟨⟩62—Agreement by railroad to guarantee ocean freight rate held without consideration.

An agreement by a railroad company to guarantee a stated rate for ocean shipment is without consideration, where at the time no contract for the shipment of the goods over that railroad had been entered into, though there was an understanding, which could not have been enforced, that the goods would be shipped over the railroad making the guaranty.

In error to the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Action at law by the Gosho Company, Incorporated, against the Southern Pacific Company. Judgment for defendant on directed verdict, and plaintiff brings error. Affirmed.

R. W. Flournoy, of Fort Worth, Tex. (Leroy A. Smith, of Fort Worth, Tex., on the brief), for plaintiff in error.

J. H. Barwise, Jr., and G. W. Wharton, both of Fort Worth, Tex. (Wm. F. Herron, of San Francisco, Cal., and Thompson, Barwise, Wharton & Hiner, of Fort Worth, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The Gosho Company, Incorporated, a Texas corporation, were dealers in cotton located at Fort Worth, Tex. It was

desirous of shipping 30,000 bales of cotton from Texas to Japan. About June 15, 1917, Gosho Company wired J. G. Stubbs, General Freight Agent, Southern Pacific Company, at San Francisco, Cal., requesting information concerning rates on cotton by steamer from San Francisco to Japan, and were advised that he could secure a rate of $1.25 per 100 pounds from the Toyo-Kisen-Kaisha for January, February, and March sailings, 10,000 bales per month; total, 30,000 bales. On said date Gosho Company wired Stubbs to book 10,000 bales of cotton per month for January, February, and March, 1918, sailings by said steamship line, asking names of steamers before booking, and requested immediate answer. Stubbs on said date replied, stating:

"Have booked firm thirty thousand bales ten thousand January ten thousand February ten thousand March sailings Korea Maru January twenty-third Siberia Maru February twenty-fourth Shinyo freighter March sixteenth at dollar quarter hundred Our contract six hundred three. Confirm FS."

On the same date, Gosho Company wired confirmation, and on June 16th Stubbs wired confirming booking. The telegrams of the 15th were confirmed, also, by letters dated June 16, 1917. About June 19th Gosho Company was advised by wire by the steamship company that it did not authorize this booking of this 30,000 bales and would not protect the space. Gosho Company at once wired Stubbs, giving this information, stating that it had already cabled this booking to Japan and could not cancel it, asking that, if the steamship company still refused to book, he would place the booking with other steamship lines, any difference on freight and insurance premiums to be reimbursed by the Southern Pacific Company. After considerable correspondence it developed that nothing further could be done; Stubbs taking the position that in transmitting the intelligence concerning the steamship company he had acted as an accommodation to the Gosho Company, and that the Southern Pacific Company was not bound for any loss which might be suffered by the Gosho Company by reason of the steamship company's refusal to recognize the booking, and the Gosho Company contending that the Southern Pacific Company was so liable. It subsequently secured the carriage of said cotton by other steamers from San Francisco to Japan at an increased rate; the increase in the freight amounting to $19,714.46.

The evidence indicated that the custom in the cotton business, where ocean space was obtained for cotton shippers in this way by railroad agents, was that the cotton would be shipped to the port over the lines of such road, and that by reason of this the practice of obtaining such shipping space through the railroad agents had grown up and was recognized. When this cotton was finally shipped by Gosho Company, none of it was moved to the Pacific Coast over the lines of the Southern Pacific Company, but was moved over the lines of its competitors.

This suit was brought by the Gosho Company against the Southern Pacific Company in the district court of Tarrant county, Tex., and was removed to the United States District Court for the Northern District of Texas on the ground of diverse citizenship. The railroad company

defended upon the ground that it did not guarantee to the Gosho Company any ocean rate, but merely as an accommodation transmitted to it information which it had received as to the rate which would be charged by said steamship company for ocean carriage of said cotton; also that, if it should be held to have guaranteed such rate, the effect thereof would be for it, in order to protect the same, to haul said cotton to San Francisco, the port of shipment, at a less rate than that filed by it with the Interstate Commerce Commission for such interstate transportation, which would be illegal, under the Interstate Commerce Act and its amendments. It further denied that it ever authorized Stubbs to make any such contract, or guaranty, or to agree to protect any steamship rate for ocean transportation, and denied generally all of the allegations of the petition.

The correspondence between the parties was introduced in evidence. Stubbs testified that he had no authority to agree for ocean transportation on the part of the Southern Pacific Company; that his sole authority was, as a matter of accommodation, to transmit between the steamship lines and cotton shippers, on request, information he might have, or obtain, in regard to the ocean rates, and of space obtained on the steamships, and that this was all he had done, or intended to do, in this particular case; that the reference to contract No. 603 in the telegram of June 15, 1917, was only to the file of correspondence with Gosho Company.

The evidence for the plaintiff showed the receipt of the telegram above quoted, and its confirmation; that it had sold the 30,000 bales of cotton in Japan at a price, relying upon the rate of freight and booking stated in said correspondence; that, but for such correspondence, it would have sold at a price which included the higher freight subsequently paid; and that it had therefore lost the difference between said amounts of freight. At the conclusion of the testimony, each side moved the court, without qualification, to direct a verdict in its favor. No other charge or direction was asked, and the court directed a verdict in favor of the defendant.

[1] 1. Where both plaintiff and defendant move for the direction of a verdict, and no further request is made, if there is any evidence to support the verdict directed, the judgment of the District Court must be affirmed, unless some error of law is shown. South Atlantic Packing & Provision Co. v. York Mfg. Co. (C. C. A.) 276 Fed. 509; Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559.

2. It is not claimed in the petition in said case that the Southern Pacific Company had bound itself to carry said cotton from San Francisco, or to furnish ocean transportation for it; but the cause of action asserted is that said company, through Stubbs, had undertaken to procure a contract for such carriage between Gosho Company and Toyo Kisen Kaisha, and had represented to plaintiff that it had effected such a contract at the rate of $1.25 per 100 pounds. Indeed, no contract for the transportation of this cotton of any sort is claimed to have existed between Gosho Company and Southern Pacific Company; but

the consideration asserted for the alleged action of the Southern Pacific Company, in relation to securing such ocean transportation for Gosho Company, was stated to be a moral obligation on the part of Gosho Company that, if it obtained such ocean transportation through the efforts of said Southern Pacific Company's officials, it would ship said cotton to San Francisco by the Southern Pacific Company's lines.

[2] It appears in this case that, on receipt of the telegram of June 15th requesting information as to rates and space for said 30,000 bales of cotton, Stubbs took the matter up and received an offer from C. R. Haley & Co., brokers of San Francisco, engaged in the business of engaging and brokering space on steamship lines from San Francisco to the Orient, and the telegrams were sent on information furnished by these brokers, and that said steamship company disavowed having made any such engagement. The first question therefore is, where a railroad company has no contract regarding the transportation of goods but only an expectation that it may obtain a contract for their shipment to a port, is it liable by reason of erroneous information, furnished by one of its agents to an owner of cotton, seeking ocean carriage from an ocean carrier, that a contract of carriage has been effected between said owner and said ocean carrier, to which said railroad carrier is not a party?

We do not think such a result could follow. At the time this information was sought and furnished, no contract of carriage existed in respect to these goods. The action of Stubbs was not in connection with any existing contract of carriage for the cotton, such as to carry it to San Francisco and deliver it to a connecting carrier. No binding agreement for the making of such a contract had been made. No subsequent contract of carriage was made as to these goods, which might have been considered as an adoption of the action of Stubbs as a part of such contract.

Under this state of facts, we do not think the Southern Pacific Company can be considered as having made this representation, and that the actions of Stubbs were not binding on the corporation. Therefore they afforded no basis for a cause of action against said company.

[3]. 3. But, assuming that the telegrams and letters of Stubbs should be considered as those of the Southern Pacific Company, the effort in this case is to hold that company to a guaranty of the ocean rate at $1.25 per 100 pounds. Had there been an express promise to this effect by the Southern Pacific Company, it would have been without consideration to support it. It is conceded that the Southern Pacific Company had no interest in the ocean carriage or share in the freight to be collected by the ocean carrier. The contract for such carriage would have been solely between Gosho Company and such steamship company.

The only inducement to the action of the Southern Pacific Company would have been its expectation that the cotton would have been carried by its rail lines to the port. But it had no enforceable agreement with Gosho Company for such rail shipment. Had that company forwarded said cotton to the port by other transportation lines, it would have had no cause of action against it. Therefore there was no con-

sideration on the part of the Southern Pacific Company for any undertaking it might make in regard to the ocean carriage by the steamship company, even conceding it had the charter power to have made such an undertaking. Morrow v. Southern Express Co., 101 Ga. 810, 28 S. E. 998; Simpson v. Sanders, 130 Ga. 265, 268, 60 S. E. 541.

4. If the action be considered as one sounding in tort for the negligent act of a gratuitous agent, pretermitting the question of the power of the defendant company to act as such agent, there was evidence to sustain a finding by the court that there was no such negligence as would require a finding in favor of the plaintiff and the court in directing the verdict on the motion of both parties, was warranted in directing it for the defendant.

5. The transaction involved in this case occurred long before the passage of the amendment to the Interstate Commerce Act approved February 28, 1920 (41 Stat. 456, 499). It is therefore unnecessary to consider the provisions thereof requiring carriers by railroad, upon application of a shipper, to request information as to rates from carriers by water, as it clearly cannot affect the present case, even if its provisions would now apply to a like situation.

6. In this case no contract for carriage of these goods to the port was ever made with the defendant. It is to be doubted, therefore, if any question of the effect of the Interstate Commerce Act and its amendments is for consideration. However, it is not necessary to pass on the defense that a recovery in this case would work a discrimination under the Interstate Commerce Act and amendments, as the case is disposed of by what has already been said.

The judgment of the District Court is affirmed.