**FLEISCHMANN MFG. CO. v. IRWIN, Collector of Internal Revenue.**

(Circuit Court of Appeals, Second Circuit. December 8, 1924.)

No. 27.

1. **Evidence ⚏⊐550(1)—Expert's testimony as to whether gin was rectified, based on what witness said, held proper.**

In action to recover tax imposed by Revenue Act 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), on gin rectified under Rev. St. § 3244 (Comp. St. § 5971), involving issue as to whether plaintiff's gin had been rectified within such statutes, it was not improper to permit expert to characterize or interpret plaintiff's method of making gin, basing his characterization on what plaintiff's own witness said.

2. **Evidence ⚏⊐519—Evidence as to conduct of substances admissible in action involving issue as to whether gin was rectified.**

In action to recover tax imposed by Revenue Act 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), on rectified gin, evidence as to conduct of substances well known to chemists *held* admissible, in order to base thereon an argument as to conduct of substances confessedly used by plaintiff.

3. **Stipulations ⚏⊐18(8)—Parties who stipulate that they may be deemed to have moved for a directed verdict are concluded by court's finding, if supported by any evidence.**

Where case was tried pursuant to a stipulation that both parties would be deemed at the conclusion of the case to have moved for a verdict, the parties are concluded by court's finding if there is any evidence in support thereof.

4. **Appeal and error ⚏⊐1010(1)—Internal revenue ⚏⊐38—Question whether plaintiff's gin was produced by redistillation of pure spirit over juniper berries and other aromatics, held question of fact.**

In action to recover tax imposed by Revenue Act 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), on rectified gin, whether plaintiff's gin was produced by the "redistillation of a pure spirit over juniper berries and other aromatics," within proviso exempting such gin, *held* question of fact, on which court's finding was conclusive when sustained by some evidence, in view of stipulation for directed verdict.

5. **Internal revenue ⚏⊐12—Gin, rectified in order to restore chemical stability, subject to tax, though produced in manner specified by proviso.**

Plaintiff's gin *held* subject to tax as rectified gin under Revenue Act 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), even if "produced by the redistillation of a pure spirit over juniper berries and other aromatics," within proviso exempting gin so produced, where, after distillation was complete, it was rectified in order to restore chemical stability.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Fleischmann Manufacturing Company against Roscoe Irwin, Collector of Internal Revenue. Judgment for defendant (293 F. 267), and plaintiff brings error. Affirmed.

Action to recover a tax exacted by defendant. Plaintiff is a distiller, manufacturing, among other articles, gin. Subsequent to 1917 it made a large quantity of gin, its method being to heat the pure spirits containing the juniper berries and aromatics necessary for the gin flavor, then the heat vaporized the spirits, the vapor passed into the cooling coils, was thereby condensed, and came out flavored as gin.

This liquid was somewhat reduced in strength by the addition of distilled water and then stored in barrels lined with paraffin for some time, its "proof" in the barrels being 140. Beverage gin is 95 proof; and when the time came to prepare it for sale as a beverage it was found that the paraffin had plainly flaked off into the gin. Except for these flakes, the gin was as clear as when it had been put in the barrels.

It was then poured into a tank and mixed with enough distilled water to reduce it to beverage proof, and "in that procedure we found that the gin became cloudy, which necessitated the use of a filter to take out the paraffin particles." It was accordingly passed through a Kiefer filter, and on emerging from this filter was clear, unclouded, marketable beverage gin.

There is a well-known method of making gin other than that pursued by plaintiff. It consists in vaporizing the pure spirits and passing the vapor through the necessary aromatics. This is a distillation, and it is sometimes repeated in order to strengthen the flavor.

The use by plaintiff of a Kiefer filter for the purposes aforesaid was treated by the defendant as a rectifying of the gin, and as such subject to a tax levied by section 304 of the Revenue Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c). The tax was paid under protest and this action brought to recover.

The only statutory definition of "rectification," or of a "rectifier," is found in R. S. § 3244 (Comp. St. § 5971), to wit (omitting immaterial matter): "Every person who * * * purifies * * * distilled spirits * * * by any process other than by original and continuous distillation from mash

* * * through continuous closed vessels and pipes, until the manufacture thereof is complete * * * shall be regarded as a rectifier, and as being engaged in the business of rectifying."

The tax in question levied under the act of 1917 must rest upon the following language (again omitting immaterial words): "Sec. 304. That in addition to the tax now imposed * * * on distilled spirits there shall be levied * * * a tax of fifteen cents on each * * * gallon * * * on all distilled spirits * * * rectified, purified, or refined in such [i. e., as in Rev. St. § 3244 (Comp. St. § 5971)] manner * * * provided, that this tax shall not apply to gin produced by the redistillation of a pure spirit over juniper berries and other aromatics." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c.

At trial plaintiff contended that the filtering of the gin at 95 proof was solely for the purpose of removing the paraffin particles, a process long permitted by the Internal Revenue Department and by it not regarded as rectification. Wherefore there had been no rectification of this gin within the statutes, and the case was governed by Mayes v. Paul Jones & Co. (C. C. A.) 270 F. 121.

The government offered evidence, however to the effect that the addition of water to the gin at 140 proof "threw the essential oils out of solution" and so produced a cloudiness which required the very careful filtration of the Kiefer machine for the removal of said oils. Such a process was claimed to be rectification.

The government also offered evidence to the effect that the words of the proviso, section 304, viz., "the redistillation of a pure spirit over juniper berries," etc., referred to a particular style of gin-making, viz., substantially the second of the above-described methods; so that plaintiff's method did not fall within the language of the exception.

Some of defendant's evidence consisted in taking the opinions of experts based upon their experiments with specimens of spirits not taken from plaintiff's gin, but the qualifications of the expert witnesses were not successfully questioned.

The court below directed verdict for defendant, and plaintiff took this writ.

Levi Cooke, of Washington, D. C., and George B. Lester, of New York City, for plaintiff in error.

William Hayward, U. S. Atty., and Victor House, Asst. U. S. Atty., both of New York City, Charles T. Hendler, Sp. Atty., for Internal Revenue Department, and Nelson T. Hartson, both of Washington, D. C., for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] Plaintiff's exceptions to the admission of testimony are not well taken. It was not improper to permit an expert to characterize or interpret plaintiff's method of making gin, basing his characterization on what plaintiff's own witness had said. Nor is there any rule against what has been called at bar "empirical" testimony, by which we understand to be meant evidence as to the conduct of substances well known to chemists, in order to base thereupon an argument as to the conduct of substances confessedly used by plaintiff.

This case was tried pursuant to a stipulation that both parties would be deemed at the conclusion of the case to have moved for a verdict.

[3] The effect of this practice is too well known to require extended citation. The leading case is Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, holding that when "both parties ask the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are therefore concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof." This rule has been applied so frequently in this circuit that it is necessary to cite only one of the latest cases, American, etc., Corp. v. Spielberg (C. C. A.) 262 F. 492.

As shown above, there was evidence for the plaintiff that all that the Kiefer filter did was to mechanically remove certain particles of paraffin, which (it was argued) was not rectification; on the other hand, there was evidence that prior to insertion in the filter the admixture of water had disturbed the chemical stability of the gin, and to restore such stability by filtration was rectification. In this point the court found in favor of the defendant, and it is impossible to say that there is no evidence to support the finding.

There was another question presented below and acutely argued here, viz., whether at any time from the beginning of process to the completion of the potable beverage gin, the plaintiff had produced gin by "a redistillation of a pure spirit over juniper berries," etc.

The question is: Does the quoted phrase reasonably apply to what the plaintiff did, or is it limited substantially to a process (confessedly known to the art) by which the vapor of spirits (not yet gin) becomes gin by passing through or over the aromatic substances intended to flavor the finished article?

[4] In the light of the testimony herein, the majority of this court incline to regard this as a question of fact, and so regarded, the trial judge distinctly found against plaintiff; and again it is impossible to say that there was no testimony in support of the finding.

If, however, this second question be regarded as one of law, on the ground (as must be the case) that there is no real contradiction about the facts, we are unanimously of the opinion that the proviso of section 304 should not be regarded as singling out gin made by one particular method and relieving that article from the taxation laid upon gin made by other methods.

One presumed object of a tax statute is to produce equality of burden. If gin be produced by exposure of vapor to aromatics, i. e., by the second of the methods above indicated, there may be an incidental rectification (within part of the technical definition of R. S. § 3244) of the vaporized spirit, but such exposure is a portion of that "original and continuous distillation" which is recognized by R. S. § 3244, as something that the mere rectifier does not do; for one "sense" of that statute is that one who rectifies is a different legal entity from one who distills.

If one who purified gin, or vapor that would condense into gin, as a part of the distillation process, were compelled to pay tax only on distillation, then one who purchased pure spirit and redistilled it over aromatics would under the body of section 304 be at a disadvantage of 15 cents per gallon. The resulting gin would in one case bear the distiller's tax only, and the other the rectifier's tax in addition.

This inequality was avoided by the proviso, under which one who made gin by redistillation of pure spirit over aromatics was as free of the rectification tax, as one who incidentally rectified during an original and continuous distillation was free of the brand of being a rectifier—under R. S. § 3244.

[5] Thus while most of us think that it was a question of fact whether the way in which plaintiffs made gin ever at any time involved the redistillation of a pure spirit over aromatics, and are of the opinion that the determination of that fact against plaintiff cannot be reviewed here on this record, we further think that assuming that plaintiff's process did involve such distillation as is shortly described in the proviso of section 304, yet the gin that resulted from that process was a finished article; it was too strong, but it was gin. It then, as it were, became contaminated or changed by chemical action or decomposition (a finding of fact binding on us), and so required treatment with the Kiefer filter. Since that treatment was more than the mechanical removal of extraneous particles of paraffin, the Mayes Case, supra, does not apply; it was a technical rectification not within the proviso of section 304, and the tax was incurred.

Doubtless it was a misfortune unanticipated; it was perhaps as if some malicious person had dumped a foreign chemical in the gin, which could be removed by a process of purification, but purification of that kind is rectifying by statute. It is not unknown that business misfortune involves the unfortunate in additional taxes—and this may be such a case. At all events, we cannot avoid the statutory result.

Judgment affirmed, with costs.